**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Stoy DECKER, Floyd Arthur Guinn and Robert Matthew Cox, Defendants-Appellants.**

**Nos. 14658–14660.**

United States Court of Appeals
Sixth Circuit.

June 29, 1962.

Ralph H. Logan, Louisville, Ky. (Hardy, Logan & Tross, Ralph H. Logan,

Louisville, Ky., on the brief), for appellants.

John F. Lally, Attorney, Department of Justice, Washington, D. C. (William E. Scent, U. S. Atty., Louisville, Ky., John F. Lally, Attorney, Department of Justice, Washington, D. C., on the brief), for appellee.

Before CECIL and O'SULLIVAN, Circuit Judges, and THORNTON, District Judge.

O'SULLIVAN, Circuit Judge.

In a thirteen count indictment, defendants-appellants were charged with conspiracy to embezzle and with embezzling union funds, in violation of § 501(c), Title 29 U.S.C.A. (Labor-Management Reporting and Disclosure Act). During the period involved, October 2, 1959, to October 21, 1960, defendant Stoy Decker was President and Chief Business Agent of Local 86 of the Teamsters Union, located in Louisville, Kentucky, defendant Floyd Arthur Guinn was Secretary-Treasurer of the Local, and defendant Robert Cox was a former Assistant Business Agent of such Local. All three defendants were convicted of conspiracy. Decker and Guinn were convicted also of embezzlement.

The offenses charged related to withdrawal of funds by checks drawn on the Local's bank accounts. These checks were signed by Decker as President, and by Guinn as Secretary-Treasurer. The office manager of Local 86 testified that while it was the practice to have vouchers and supporting data for all regular withdrawals of union funds, there were none for the withdrawals involved here except for one $50.00 check. There was evidence that all of the checks were used for the personal benefit of the defendants. At Cox's suggestion, an attorney's fee in the amount of $50.00 for services rendered to Cox's son was paid out of union funds. Personal notes of Cox, on which Decker was endorser, were paid with union funds by checks totalling $685.40. The explanation given by defendants with respect to one of such checks was that it represented severance pay which Decker determined was owing to Cox. This check was issued some five or six months after Cox's employment with the union had been terminated and after he had received his salary in full, with three weeks vacation pay. (Cox, at the time his employment with the union ended, had worked about four weeks since his previous vacation). A check for $1,500.00 drawn to Cox's order, was purportedly for organizational work in connection with organizing a taxicab company. There was evidence that Cox had not performed any service in that connection. One check was given ostensibly to reimburse Guinn for repairs to his automobile. At the time, Guinn was receiving $10.00 weekly from the union for "wear and tear" on his automobile, in addition to money for gas and oil. Guinn used the check to repay a personal loan of $335.48.

FBI agents began their investigation of the affairs of Local 86 on September 23, 1960. When asked by such agents if the union had a bank account for organizational funds, Decker replied that there had been such an account but that it had been closed out and the money sent to Teamster headquarters in Washington. Contrary to such statement, there was then a substantial balance in such account. On September 29, 1960, Decker directed Guinn to draw out the entire balance of the organizational fund, $4,518.47, with a check payable to one Roth, a former Ohio teamster organizer. At that time, Decker and Roth were in Newport, Kentucky, and Guinn in Louisville. Guinn made out the check and took it to Newport. Decker and Roth then went to Cincinnati, Ohio, where Roth, with the help of a friend, got the check cashed. The cash was turned over to Decker, and Decker and Roth then spent the balance of the day drinking at various locations in Cincinnati. During such relaxation, Decker gave some of the money to Roth, presumably to reward the latter for getting the check cashed. Decker explained that he withdrew the entire balance of the union's organizational fund to pre-

vent it being "tied up" in the investigation which had been started. On a later occasion, Roth, at Decker's direction, obtained a check for $600.00 from Guinn, cashed it, and turned the proceeds over to Decker. Several other checks were made payable to Roth for "organizational work" and "car expenses." At the trial, Roth gave a different explanation of one of the checks—that it was given to help him out of some "girl trouble."

On these appeals, defendants make four contentions. First, that the District Judge erred in denying their motions for continuance; second, that the District Judge erred in reading § 501 (a), Title 29 U.S.C.A., to the jury; third, that §§ 501(a) and 501(c) of Title 29 are unconstitutional; and fourth, that verdicts of acquittal should have been directed for all defendants for insufficiency of evidence.

■ (1) *Motion for continuance.* The indictment in this case was returned on March 18, 1961. Defendants were arraigned on March 22, 1961, at which time the case was set for trial for April 3, 1961. Upon the claims that they were representing Decker in connection with other criminal charges pending against him, and that they would not have adequate time to prepare for trial of this cause, defense counsel moved for a continuance. The motion was denied. The time between indictment and trial was short, but the denial of the sought for continuance was within the discretion of the District Judge. Avery v. Alabama, 308 U.S. 444, 446, 452, 453, 60 S.Ct. 321, 84 L.Ed. 377; Adams, et al. v. United States, 128 F.2d 820, 821 (C.A. 5, 1942). We find no abuse of discretion and emphasize that counsel have not specified any prejudice that came to their clients because of the haste with which counsel had to prepare for trial.

A further ground relied upon for continuance was the unfavorable publicity that was given to Decker and the other defendants just prior to, and during the course of, the trial of this case. All three defendants had been tried, and Decker and Cox were convicted, on other charges involving their activities in connection with Local 86. Other indictments involving Decker and Cox were pending at the time of trial. The press reported these events and gave the usual newspaper accounts of the progress of the trial of the case. The newspapers also reported the affirmance of a previous conviction of Decker and Cox. The unfavorable publicity that has been given to the activities of certain officers of the Teamsters Union nationwide is also referred to. We have examined the newspaper articles attached to defendants' motion for a new trial. Our examination of them does not persuade us that the District Judge abused his discretion in denying a continuance. Such ruling, absent abuse, was within his discretion. United States v. Moran, 194 F.2d 623, 625 (C.A. 2, 1952); Shushan v. United States, 117 F.2d 110, 116, 133 A.L.R. 1040 (C.A. 5, 1941); Finnegan v. United States, 204 F.2d 105, 110 (C.A. 8, 1953). Somewhat similar publicity attending the indictment and trial of David Beck, one time national president of the Teamsters Union, was relied upon as ground for continuance of his trial. The Supreme Court has now held that error was not committed in a trial court's denial of a continuance on those grounds. David D. Beck v. Washington, 82 S.Ct. 955. A jury chosen from the same panel as was the jury which convicted these defendants had heard some unfavorable comment concerning Decker. No members of the jury in this case, however, were members of such jury and it was not shown that they had heard the unfavorable comment. Nor is it claimed that defendants' counsel were prevented from exercising all desired challenges or that the District Judge failed to properly conduct the voir dire examination of the jury.

(2) *Constitutionality of § 502(c), Title 29 U.S.C.A.* We have difficulty in following the defendants' attack on the constitutionality of the statute involved.

Their brief says, "Section 501(a) and 501(c) are unconstitutional because they are an improper delegation of power to the Federal Courts which is unwarranted under Article III. of the United States Constitution. Article III * * * limits the judicial power of the United States to all cases 'arising under this Constitution and the laws of the United States * * *.' Section 501(a) denotes a policy to further regulate labor unions, the propriety of which is unassailable, but the substantive law required to carry out this policy is virtually nonexistent in federal law. There are no laws of the United States or in the Constitution relating to control of fiduciaries. (§ 501 [a] says that union officers occupy positions of trust in relation to the union and its members). Hence it seems reasonable to ask, where is jurisdiction acquired so as to entitle a jury in the Federal Court to judge whether or not Section 501(a) has been violated?"

■ It is late in the day to question the power of Congress to regulate the affairs of labor unions which function as a part of, and have an effect upon, interstate commerce. National Labor Relations Board v. Jones and Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893; American Communications Association v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925. The statute here involved, § 501(c), Title 29 U.S.C.A., merely makes it a crime for union officers and employees to embezzle or steal the union's funds. This union is concededly a labor union within the meaning of § 402(i, j), Title 29 U.S.C.A. (Landrum-Griffin Act). We find nothing in the Constitution which would forbid Congress from protecting the rights of members of such union against the kind of thievery involved here. Because of the recent enactment of the statute containing the attacked section, few courts have had occasion to consider its constitutionality. Those that have, have sustained its constitutionality. Lawson v. United States, 300 F.2d 252 (C.A. 10, 1962); United States v. Haverlick, 195 F.Supp. 331 (N.D. New York, 1961).

■ These defendants were not charged under § 501(a) which generally describes the duties of trust owed by union officers to their union. The District Judge read that section to the jury in his charge. Defendants claim error on his so doing. We find no impropriety in the reading of this section as a preliminary observation in the District Court's well rounded charge. In any event, no objection to that part of the charge was made and we will not consider it now. Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A. Grant v. United States, 255 F.2d 341 (C.A. 6, 1958) cert. denied 358 U.S. 828, 78 S.Ct. 48, 3 L.Ed.2d 68; Stanley v. United States, 245 F.2d 427, 436 (C.A. 6, 1957).

■ (3) *Sufficiency of evidence of guilt.* Our discussion of the evidence does not cover all that the government produced. We will not lengthen this opinion by a more extended recital of it. We are satisfied that there was evidence from which the jury could find, beyond a reasonable doubt, that Decker, Guinn and Cox were guilty of the offenses for which they were convicted. On testing the sufficiency of the prosecution's evidence to withstand a motion for directed acquittal, the trial court, as well as the appellate tribunal, must view the evidence and the inferences that may justifiably be drawn therefrom, in the light most favorable to the government. United States v. Berkley, 288 F.2d 713, 716 (C.A. 6, 1961); Battjes v. United States, 172 F.2d 1, 5 (C.A. 6, 1949); Riggs v. United States, 280 F.2d 949, 954 (C.A. 5, 1960). So tested, we find the government's evidence sufficient. Defendant Guinn asks to be excused because he was doing his boss' (Decker's) bidding. Loyalty to a superior does not provide a license for crime. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Manton, 107 F.2d 834, 839 (C.A. 2, 1938); Hodge v. United States, 13 F.2d 596 (C.A. 6, 1926). Ap-

plying that standard to the record, we are satisfied that the jury could well find that Guinn and Cox knew what was going on and were willing participants in this mishandling and misappropriation of the union's money.

The judgments are affirmed.