**Stoy DECKER, Petitioner-Appellant,**

v.

**UNITED STATES of America,**
**Respondent-Appellee.**

**No. 16891.**

United States Court of Appeals
Sixth Circuit.

June 9, 1967.

---

Stanley A. Stratford, Louisville, Ky., for appellant, Campbell & Stratford, Louisville, Ky., on brief.

Ernest W. Rivers, Louisville, Ky., for appellee.

Before O'SULLIVAN, PECK and Mc-CREE, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Petitioner was convicted and sentenced in 1961 for violating 26 U.S.C. § 5851 (possession of unregistered firearm) and, in a separate trial, for violating 29 U.S.C. § 501(c) (embezzlement of union funds). These convictions were affirmed by this Court in United States v. Decker, 292 F.2d 89 (CA 6, 1961) (the firearm case) and United States v. Decker, 304 F.2d 702 (CA6, 1961) (the embezzlement case). He now appeals from denial, without hearing, of his petition (28 U.S.C. § 2255) to have vacated the sentences imposed under those convictions.

1) The firearms case.

Petitioner charges that § 5851 of the National Firearms Act is unconstitutional—violating the self-incrimination clause of the Fifth Amendment of the United States Constitution. Another claim that § 5851 is a Fifth Amendment deprivation was made in Decker's direct appeal, 292 F.2d at 91, and we there held to the contrary. Decker now relies upon the cases of Russell v. United States, 306 F.2d 402 (CA 9, 1962) and United States v. Fleish, 227 F.Supp. 967 (E.D.Mich.S.D.1964) both of which found § 5841 U.S.C. Title 26 unconstitutional, because anyone registering a firearm under that section must necessarily, by so doing, admit violation of other provisions of the Act.[1] Decker claims that if Section 5841 is unconstitutional, so must be Section 5851.

This logic will not suffice. True, there is relationship between the various sections of the Firearms Act, but the offense charged to Decker was not the failure to register the firearm as required by § 5841, but, as set out in § 5851, was possessing a "firearm which has at any time been *transferred* in violation of [specified sections, including requirements as to tax] * * * or * * * has not been registered as required by section 5841." (Emphasis supplied.) In our earlier consideration of Decker's conviction, we recited "There was no question but that the weapon had not been registered with the Secretary and had been transferred without payment of the tax." 292 F.2d at 90.

The *Russell* and *Fleish* cases, supra, which held that Section 5841 was unconstitutional when used to find criminal guilt for failure to register a firearm, were not handed down until 1962 and 1964, respectively, after the first *Decker* opinion in 1961. In 1965, however, in United States v. Forgett, 349 F.2d 601 (CA 6, 1965) cert. den. 383 U.S. 926, 86 S.Ct. 929, 15 L.Ed.2d 845, we dealt again with an attack on the constitutionality of a section of the National Firearms Act, this time § 5855 U.S.C. 26, which made it a crime to ship firearms

---

1. § 5841 reads, in part:

"Every person possessing a firearm shall register, with the Secretary or his delegate, the number or other mark identifying such firearm, together with his name, address, [etc.] * * *. No person shall be required to register under this section with respect to a firearm which such person acquired by transfer * * * *if* provisions of this chapter applied to such transfer * * * were complied with. (Emphasis supplied.)

which had not been registered under § 5841. We pointed out therein that *Russell* had to do with failure merely to register under § 5841, whereas *Forgett* involved a defendant who shipped unregistered firearms; and we noted that the Ninth Circuit distinguished its *Russell* decision in a similar fashion in Frye v. United States, 315 F.2d 491 (CA 9, 1963), cert. den. 375 U.S. 849, 84 S.Ct. 104, 11 L.Ed.2d 76 and Starks v. United States, 316 F.2d 45 (CA 9, 1963), cases which were followed by the Eighth Circuit in Sipes v. United States, 321 F.2d 174, 177, 178 (CA 8, 1963). Language from the *Starks* opinion is relevant here:

" * * * the defendant was not charged with failing to register the weapon, as was the defendant Russell, but was charged with possession of an unregistered weapon. Section 5841, considered in Russell, makes it an offense to fail to register, and we held in Russell to that extent, it is invalid. It is the possession of the gun that no one has registered, not the failure by appellant to register, that is the essence of the offense with which appellant was charged in this case." 316 F.2d at 46.

As we indicated earlier, Decker was charged with possessing a firearm transferred in violation of Section 5851, not with failing to register a weapon as required by Section 5841. The present attack upon the constitutionality of the involved sections of the Firearms Act, in the factual context of this case, is without merit.

2) The embezzlement case.

Decker attacks his conviction and sentence for embezzlement of union funds, 29 U.S.C. § 501(c) (United States v. Decker, 304 F.2d 702) upon the following several grounds:

(a) Excessive sentence.

■ The jury convicted Decker on 10 counts of the indictment, and he was sentenced separately upon each of them. While all the counts dealt with the embezzlement of union funds, the several acts charged extended from October 2, 1959, to October 21, 1960, and were accomplished in differing ways and involved varying amounts of money. Decker urges, however, that the acts of embezzlement cited in the indictment constituted but a single course of conduct, amounting to only one offense. He relies on United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952) where the Supreme Court sustained a District Court ruling that separate criminal violations of the Fair Labor Standards Act did not occur each week as to each employee that received less than the required wage, nor did there occur a separate violation for each uncompensated hour of overtime, nor for each failure of proper record keeping. It approved, rather, separate counts for the several categories of violations—illegal wage rate, illegal overtime and failure of record keeping—since each of these counts would respectively, and correctly, describe a course of criminal conduct. Such is not the case here where the same statute was violated on different occasions by different methods. The language of the Supreme Court in Blockburger v. United States, 284 U.S. 299, 302, 52 S.Ct. 180, 181, 76 L.Ed. 306, 308 (1932) distinguishes the action by Decker—his various pilferings from the union till—from "the course of conduct" approach in *Universal C.I.T.*:

"The distinction stated by Mr. Wharton is that 'when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.' Wharton's Criminal Law (11th Ed.) § 34. Or, as stated in note 3 to that section, 'The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. * * If the latter, there can be but one penalty.' "

Decker's several violations did not constitute but one "course of conduct."

### (b) Prejudicial publicity.

Petitioner claims that unfavorable publicity prejudiced his case. This issue was raised and found without merit in United States v. Decker, 304 F.2d at 704. We adhere to that ruling.

### (c) Denial of effective assistance of counsel.

Petitioner's claim of violation of his Sixth Amendment right to effective assistance of counsel is presented in a novel context. This is the story. Decker was president and business agent of Local 86, Teamsters Union; both the union and Decker had many troubles. One Ralph H. Logan of the Louisville bar, had represented Local 86 in its difficulties and had acted as Decker's attorney throughout the trial and appeal of the firearms case. When Decker was indicted for embezzlement of union funds on March 18, 1961, he again engaged Logan, who conducted Decker's defense through the trial and appeal to this Court. Our opinion affirming Decker's conviction of embezzlement came down on June 29, 1962. More than three years later Decker, this time with new counsel, filed the motion to vacate sentence here involved. Its allegations, relevant to his failure to have the effective assistance of counsel, conclusionally averred that the attorney representing him in the embezzlement case, Ralph H. Logan, "also represented as attorney conflicting interests which prevented him from devoting his full and faithful efforts to the defense of defendant. Defendant files herewith in support of his contention two exhibits, A and B." Exhibit A was a letter that Logan, as attorney for Local 86, wrote to the union's bonding company within a few days after Decker's trial, notifying it of Decker's conviction of embezzling union funds. Exhibit B was a copy of a complaint filed in 1962, some time after affirmance of Decker's conviction by this Court. This complaint sought recovery from Decker and from the insurance company which had furnished a fidelity bond upon Decker and other employees of Local 86, the amount embezzled by Decker and another. The attorney, Ralph H. Logan, signed the complaint as attorney for the plaintiff union.

The District Judge denied Decker's motion to vacate, observing, relevant to the charge of conflict of interest on the part of Decker's lawyer, that petitioner had made no factual averments to bring his case within the rule "that only if it can be said what was done or was not done by defendant's attorney for his client made the proceeding a farce and mockery of justice shocking to the conscience of a court can a charge of inadequate legal representation prevail. O'Malley v. United States, 285 F.2d 733 (6th Cir. 1961); Tompsett v. [State of] Ohio, 146 F.2d 95 (6th Cir. 1944); Hudspeth v. McDonald, 120 F.2d 962 (10th Cir. 1941)."

Thus advised of the court's holding, petitioner filed an amended petition in which he expanded his charges of perfidy by lawyer Logan as follows:

> "The true facts were withheld from the Court during the trial [the embezzlement case] at the insistence of petitioner's attorney and petitioner *has learned* this was done in order to protect other clients at petitioner's expense."

The amended motion went on to aver that the monies which Decker had been charged with embezzling had come to his Local 86 from the Teamsters International Union to pay Decker's attorney fees incurred in the firearms case, and that his use of this money was to pay such attorney fees, bond premiums and "other items incidental to the defense of local union members." Then came the following:

> "Why didn't petitioner's counsel present these facts to the Court during the trial? Petitioner states that the reason which he learned about after his conviction is (1) His counsel wanted to protect his other clients, including James Hoffa, President of the Teamsters International, from being implicated. If Petitioner had been allowed by counsel to tell the whole truth it would have shown that Mr. Hoffa and other International officials arranged

the entire transfer of funds and Petitioner was only following orders as approved by Local 86. (2) His counsel also represented Local 86 and knew if Petitioner was convicted he could collect the money from Petitioner's bonding company. This is evidenced by the fact that immediately after Petitioner's conviction, said attorney made a demand on the bonding company for the money, and thereafter sued Petitioner to collect the so-called embezzled funds when he knew all along the Local Union had approved the expenditure! Thus, if Petitioner withheld the whole truth and was convicted, his counsel protected his major clients and got them the money to spend over again! Surely such a conflict of interest makes a mockery of justice shocking to the conscience of any decent person."

Decker further averred that he did not know of this "conflict of interest" at the time, and concluded:

"Petitioner never had a chance on the 'embezzlement' charge. He was a pawn in the power game being played by the Teamsters International and the U. S. Justice Department. His attorney was quite willing to sacrifice him to help his other clients. Petitioner didn't have any idea what was happening until long after his conviction. He is entitled to have a fair trial with the benefit of counsel who will devote his full and faithful efforts to his defense."

The District Judge allowed the filing of the amended petition, but denied the motion to set aside his first order refusing to vacate sentence. While it is not of controlling importance, we note that none of these charges are supported by the oath or signature of Decker. The pleadings are signed only by Decker's current attorney.

 Inasmuch as no pleading traversing the foregoing was filed and no hearing held, Decker's allegations must be accepted as true, United States v. Rosenberg, 200 F.2d 666, 668 (CA 2, 1952) unless their essential factual content amounts only to mere conclusions, or unless the files and records of the case, in this instance Decker's testimony at the embezzlement trial, show that petitioner is entitled to no relief. Such testimony was before us when we first affirmed his conviction; it was in the record of the District Court when Decker's present motion was disposed of, and has again been brought to us on this appeal. Petitioner's reply brief, however, here complains of the government's reference to Decker's testimony at the trial at which he claims he was denied the Sixth Amendment's guaranty of counsel, and objects to our consideration of it. We must indeed consider it unless in handling these claims of deprivation of constitutional rights, we are merely playing games. If petitioner's claim is intended to be taken seriously, it must be tested against the entire record that has been established in this case.

At the trial, Decker gave his version of the use of the money taken from his union's treasury, which, if believed, would establish his innocence of the charged embezzlement, 304 F.2d at 703, 704. In general, it was to the effect that the funds were taken to pay attorney fees owed by Local 86, to pay compensation legitimately owed to its employees, and for legitimate use in union organizing activities; that one large withdrawal, $4,518.47, which completely drained the Local's bank account, was to put the Local's fund beyond the reach of any writ that might issue as a consequence of a then pending FBI investigation of the Teamsters Local and its officers. His present account does not tell us that this sum was paid to attorneys or to what use it was put. His original exculpatory account was not believed by the jury as against prosecution evidence that the use of the union's funds was plain thievery.

Decker contends now that the faithlessness of his attorney led him into withholding the true story of his use of the union funds. We assume that he is telling us that testimony that the allegedly embezzled money was sent to him by James Hoffa and the International Teamsters and used only to pay attorney fees

incurred for earlier defenses of himself and other union officials, would have been more persuasive with a jury than his first-told tale of innocent conduct. We find no substantial difference between what he now says is the truth and what he told the jury at his trial. His pleadings here do not tell, under his present account, to whom and when the union funds were given and in what amounts. We should not speculate, therefore, whether Decker would have had any better luck with the jury offering the story he now relates, particularly in view of the unimpeachable record evidence established by the prosecution at the embezzlement trial—checks, book entries, and other business documents.

Neither do we believe that the allegations now presented by him amount to more than conclusional statements that he was denied the effective assistance of counsel because his attorney was also counsel for Decker's local union which had a fidelity bond on its officers.

Decker's charges may be read in two ways: that Logan either deliberately persuaded Decker to tell a story that would lead to his conviction of embezzlement and thus permit Logan's other client, the Local, to recover on the fidelity bond covering Decker; or that Logan suborned perjury to protect his other clients "including James Hoffa, President of Teamsters International, from being implicated." As to the latter reading, petitioner's brief gratuitously asserts that "It was beneficial to said attorney's other clients (Hoffa and the International) for Decker to conceal where the money came from, but it was detrimental to Decker to do so." But on trial Decker did tell the jury that some, if not all, of the money taken by him came out of the union's organizational funds and went on to identify the source of such funds as follows:

"Q. Money used to organize the organizational account was in the sum of $13,000, came down here in a check signed by Hoffa, did it not?

A. I don't believe that Hoffa signed the check.

Q. There is no question in your mind that the account was opened and was drawn on and moneys in it were a part of union funds, is there, Mr. Decker?

A. It was a part of union funds, it wasn't a part of the regular funds of Local 86, because it came from the Central Conference.

Q. Whose money is the Central Conference of Teamsters?

A. I guess it belongs to Central Conference of Teamsters."

We consider that analytically and fairly read, Decker's petition contains no allegations of fact other than that Logan, when he undertook Decker's defense, was attorney for the Teamsters Local of which Decker was president; that after Decker's conviction, Logan, as attorney for the Local gave notice to its fidelity bond obligor that a jury had found that union funds had been embezzled; that after Decker's conviction of such embezzlement had reached repose following exhaustion of appellate remedies,[2] Logan, representing the Local, brought suit to enforce the obligation of the bond. Standing alone, these facts do not necessarily support an inference of wrongdoing. That only the above *facts* are offered to support the charge against Logan is made clear by the assertion of Decker's petition that:

"This [the duplicity of Logan] *is evidenced by the fact* that immediately after petitioner's conviction, said attorney made a demand on the bonding company for the money, and thereafter sued petitioner when he knew all along the Local Union had approved the expenditure." (Emphasis supplied.)

So also did Decker know, if it was the truth, that his withdrawals had the union's approval; aided by his attorney,

---

**2.** Logan handled Decker's appeal to this Court. The present address to us points to no failure of Logan to present, with skill and aggressiveness, Decker's defense, including the testimony which Decker chose to give at his trial.

Logan, he tried to convince the jury that it was.

█ Attorney Logan must have been quite busy representing this union and its defaulting executives; without more than is presented by Decker's petition, the District Court was not required to conduct a hearing to determine whether Logan, an officer of the Court, had been guilty of the despicable conduct conclusionally ascribed to him. In O'Malley v. United States, 285 F.2d 733, 735 (CA 6, 1961) Judge Miller, dealing with a claim of denial of the Sixth Amendment's guaranty of the assistance of counsel, said:

> "When a motion is made to vacate or set aside a judgment under Section 2255, the movant must set forth facts which *entitle him to relief.* Conclusions not substantiated by allegations *with some probability of verity,* are not sufficient to warrant a hearing." (Emphasis supplied.)

Should we accept Decker's assertion that Logan was more interested in protecting the Local and International than Decker, we are asked then to vacate sentence because of Decker's willing connivance in, and the carrying out of, his counsel's immoral suggestion that he commit perjury by withholding the truth when he took the stand. We find no decision which fits the case at bar, but it has been held that deliberate toleration of the commission of perjury cannot be later employed to gain judicial relief for one who connived in the use of the perjury. See United States v. Branch, 261 F.2d 530, 533 (CA 2, 1958); Taylor v. United States, 229 F.2d 826, 833 (CA 8, 1956), cert. den. 351 U.S. 986, 76 S.Ct. 1055, 100 L.Ed. 1500; Green v. United States, 256 F.2d 483 (CA 1, 1958). The following language from *Green* is apt here:

> "But Green cannot have it both ways. He cannot withhold the evidence, [here what Decker says was the true account of his use of the union's money] gambling on an acquittal without it, and after the gamble fails, present such withheld evidence in a subsequent proceeding under 28 USC Sec. 2255." 256 F.2d at 484.

There may come a situation where some unfortunate, desperate to protect his freedom, is led to perjure himself to his disadvantage by the importunings of an evilly purposed lawyer. It will be time enough then to consider the constitutional implications. This, in our view, is not such a case.

Considering the conclusional character of the allegations in Decker's petition, the similarity of his trial testimony with the "new" story he currently tells, and petitioner's admitted and deliberate perjury, we hold that the District Judge was justified in disposing of the matter without a plenary hearing.

Judgment affirmed.

McCREE, Circuit Judge (dissenting).

I respectfully dissent because Decker's allegations present a substantial question of denial of effective assistance of counsel and we cannot determine whether they are true without an evidentiary hearing. Since he brands as false his testimony at the embezzlement trial, we cannot employ it to establish the falsity of his allegations in the petition before us. If petitioner wants to prove that his trial testimony was perjured at the direction of his counsel who was serving conflicting interests, we must afford him the opportunity under the teaching of Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148.

Although I concur in the opinion of the court in its disposition of the firearms case, I would reverse and remand for an evidentiary hearing on the alleged Sixth Amendment deprivation.