James Pickens DAVIS, Jr.

v.

UNITED STATES of America.

Civ. A. No. 5860.

United States District Court,
E. D. Tennessee, S. D.

June 26, 1970.

James Pickens Davis, Jr., pro se.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

James Pickens Davis, Jr. is presently serving a fifteen year sentence following a conviction for bank robbery and kidnapping committed in March, 1965. Shortly after his arrest, a hearing was held to determine if Davis was mentally capable of assisting in his defense. The Court found Davis not capable and committed him for treatment. After other competency hearings, the case came on for trial in September, 1966 (United States v. Davis, 365 F.2d 251, C.A.6, reviews the psychiatric proceedings). Petitioner's defense was insanity, and the jury resolved that issue adversely to him. A ruling on the new trial motion pursuant to that verdict is reported at 260 F.Supp. 1009. On appeal, petitioner's court-appointed attorneys were discharged and petitioner was returned to the Southern Division of this District to assist his new counsel on February 26, 1967. While that appeal was pending, petitioner filed a motion to vacate under 28 U.S.C. § 2255. An oral hearing was held and the Court rendered an opinion on March 28, 1967, denying on the merits all of petitioner's claims. No appeal was taken from that order. By order, the Court of Appeals affirmed the convictions on direct appeal. (No. 17,706). On February 15, 1968 a second motion to vacate was denied by a memorandum and order.

Petitioner then filed letters with the Honorable C. G. Neese of this District charging the trial judge with personal bias and prejudice. That Judge treated the letters as a motion to vacate and determined from the pleadings that there was no merit in the allegations and denied relief in a memorandum filed August 21, 1968.

On March 31, 1970, petitioner filed a motion to vacate in 43 pages with an accompanying 97 page memorandum.

Among his 25 allegations he charged the trial judge with personal bias in his cause whereupon that judge transferred the case to this Court.

■ Before examining the petition, it is observed that res adjudicata in habeas corpus cases is not governed by the same concepts as between private litigants. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). However, " * * * [t]he sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner. * * * " 28 U.S.C. § 2255.

This principle determines many of petitioner's claims. For instance, the charge of personal prejudice by the trial judge has been decided adversely to petitioner. In addition to that reason, a close examination of the records before this Court reveals no prejudice on the part of the trial judge.

■ Many of petitioner's claims are based upon the failure of the trial judge to discharge appointed counsel and allow him to proceed pro se. A closely related charge deals with the alleged incompetency of these appointed counsel. Among other things, Davis alleges that counsel did not use process properly or call the proper witnesses to corroborate his testimony. He alleges that the trial court did not allow him to personally examine witnesses. He charges his attorney with sabotaging his insanity defense through a line of questioning to a medical witness. It is further charged that one attorney turned over his entire witness list with a summary of the facts to be proven from the witnesses' testimony to the prosecution. All counsel are charged with improper preparation of the case. These matters have been decided adversely to the petitioner in other phases of this litigation and cannot be raised in this proceeding.

■ Davis alleges that the trial court erred in not allowing a continuance for the purpose of securing other counsel. On the other hand, he alleges that the delay in bringing him to trial amounted to a denial of the right to a speedy trial. This Court finds no breach of the trial court's discretion in denying the motion for continuance and that the speedy trial aspect has been previously determined against petitioner.

■ Davis charges that the Government used perjured testimony to secure his conviction. In the March, 1967 memorandum the trial court ruled that alleged perjury about double parking Davis' auto at the bank and the use of excessive force in arresting Davis were not relative to the insanity defense and would not serve as a basis for vacating judgment. In a very similar vein, Davis charges that Dr. Demos, the kidnap victim, perjured his testimony concerning the arrest. This Court finds that the use of perjured testimony which is known by the defense to be perjured at the time of trial is not a basis for setting aside a verdict. Evans v. United States, 408 F. 2d 369 (C.A.7, 1969) following Decker v. United States, 378 F.2d 245 (C.A.6, 1967).

■ The Court further finds that the use of excessive force at the time of arrest, as determined in 1967, is not a reason to vacate judgment and did not deny petitioner a fair trial.

■ Petitioner makes the bare allegation that the Government suppressed evidence. In a related claim, he contends that the discovery provisions of F.R.Cr. P. 16 were violated. In his brief under the topic "suppression of evidence," he narrates how some 16 pages of "reflections" he had written before the bank robbery and kidnapping were not produced at trial. After reopening the 1967 hearing for additional evidence on the reflections, the trial judge noted that "[no] motion to produce the document was ever made on behalf of the defendant at the time of the criminal trial." Rule 16 requires a motion for discovery. The adverse determination in 1967 is binding on petitioner's claims.

■ Petitioner alleges that following an outburst by the kidnap victim, the trial court incorrectly instructed the

jury. This Court finds no error in the instruction quoted at 260 F.Supp. 1009, 1012.

■ Petitioner makes the bald accusation that wholesale hearsay evidence was admitted in violation of his rights. Such conclusory statements in petitions to vacate are not given credence. Tucker v. United States, 423 F.2d 655 (C.A.6, 1970).

■ Petitioner alleges in a conclusive statement that he was in jeopardy on January 10, 1966 and his subsequent conviction was the result of double jeopardy. From the facts stated at 365 F.2d 251, 253, this Court does not agree with petitioner. Those appearances were before the Court without a jury to determine petitioner's competency. Davis was not in jeopardy at that time. Cf. Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).

■ Petitioner has asserted that only 211 pages of the trial proceedings were before the Court of Appeals on his direct appeal and that these excerpts of the transcript were incomplete and fraudulent. The "record on appeal," F. R.App.P. 10, then F.R.C.P. 75 and 76, is the responsibility of the appellant. Appellant may order the entire transcript or the portions deemed material to the appeal. If the record were erroneous, a procedure is established to correct or modify it. This Court is of the opinion that it is too late for petitioner to attack the record. In addition to this reason, petitioner has failed to assert how the record was incorrect except for a lengthy demand for the entire record at Government expense.

■ Petitioner has alleged that pretrial publicity denied him a fair trial. It is alleged that a newspaper reported a false confession. In his brief, he narrates that his case "was voted the No. 2 news story of the year 1965 by the Chattanooga Times." There were 16 different front page headlines alone and around 38 different stories on the case before the trial even started. Part of the news reports dealt with evidence from psychiatric testimony taken pursuant to 18 U.S.C. § 4244. That statute establishes procedures for handling persons mentally incompetent after arrest and before trial. It provides that no statement made by the accused in the course of his psychiatric evaluation can be used in evidence on the issue of guilt. Petitioner contends that the public release of these reports violates the statute in some manner and compounded the effect of the pre-trial publicity. It is noted that petitioner says this point was raised on direct appeal. Aside from this reason, the pleadings do not show that such a "Roman holiday" existed when petitioner was tried to amount to a denial of due process. Cf. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, decided June 6, 1966, some three months before petitioner's trial. Also the 17 month delay between arrest and trial and the interim insanity hearings account, to some degree, for the quantity of the newspaper articles.

■ After the jury verdict the trial court did not request that a pre-sentence report be prepared. F.R.Cr.P. 32(c) (1). Allegedly he chose to rely on information contained in the prior psychiatric evaluations of petitioner. Petitioner contends that it is erroneous for a trial court to consider a pre-sentence report before guilt is determined. It follows, he contends, that since the psychiatric report was in lieu of a pre-sentence report that the trial court erred. Even assuming that petitioner's premise is correct, his argument fails. The trial court was familiar with the information contained in the psychiatric reports from the prior proceeding pursuant to 18 U.S.C. § 4244. Pertinent data would only be duplicated in a pre-sentence report. The trial court's acts resulted in no prejudice to petitioner and were a laudable economy to the Government. This action is no reason to vacate the judgment.

■ Petitioner alleges that he was taken directly from Court to a mental institution instead of a penitentiary in violation of 18 U.S.C. §§ 3568, 4083 and 4241. The Court finds that the alleged

procedure violated none of the enumerated statutes in view of the broad guidelines imposed upon the Attorney General in the treatment of prisoners. 18 U.S.C. § 4081.

▆▆ Davis alleges that the Government did not furnish him with the names and addresses of witnesses and veniremen as required in a capital case. 18 U.S.C. § 3432. The indictment, drawn under 18 U.S.C. § 1201, did not allege that the kidnap victim was released unharmed. Consequently, there was a possible chance that petitioner was charged with a capital offense. Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041; Amsler v. United States, 381 F.2d 37, 44 (C.A.9, 1967—Cecil, J. sitting by designation). Conceding arguendo that this error may be raised on collateral attack, the Court finds that Davis was not charged with a capital offense. The record shows no proof that the kidnap victim was harmed. Furthermore, on January 10, 1966, there was a discussion between the Court and counsel about the number of challenges. At that time, Government counsel stated, "I might call this to the Court's attention that it is not the Government's intention that the crime charged herein or what we anticipate to prove would be subject to the death penalty." This statement was made some nine months before the case was actually tried. The requirements of 18 U.S.C. § 3432 did not apply in this case.

While petitioner has argued the previous points at length, the major thrust of his petition is that evidence from an illegal search of petitioner's automobile, introduced without objection at the trial, should vitiate the conviction. Quoting apparently from the transcript prepared for direct appeal, petitioner shows that a coat and hat were introduced to identify him as the bank robber. Petitioner contends that he is squarely within the rule announced in Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969).

▆▆ In his 1967 memorandum dismissing the motion to vacate, the Court observed:

"In evaluating the adequacy of the petitioner's representation at the criminal trial and the choice of witnesses called in his defense by his counsel, it should be noted that it is undisputed in the record that the petitioner did in fact rob a bank of $8860.00 upon March 26, 1965, by threatening the lives of the tellers and others present with a loaded pistol, which incidentally was discharged in the course of his escape. It was undisputed at the criminal trial that following the bank robbery the petitioner herein did kidnap Dr. Demos and require that he assist him in his effort to escape. This, too, was accomplished by the threatened use of a loaded pistol. These matters were testified to by every witness taking the stand and having knowledge of the same, including the petitioner himself. These undisputed matters tend to be lost to the petitioner's view in his attack upon his conviction. The petitioner's sole defense was that he was legally insane at the time of the commission of the offenses. More specifically, the petitioner contends that he acted under an irresistible impulse in committing the robbery and the kidnaping." p. 4, Memorandum filed March 28, 1967 in Civil Action No. 4940.

In view of this statement the Court does not understand how the coat and hat, even if illegally obtained, could have prejudiced petitioner's trial. Also, in Kaufman "[a]ppointed counsel had objected at trial to the admission of certain evidence on grounds of unlawful search and seizure, * * *" Id. at 220, n. 3, 89 S.Ct. at 1071, n. 3. Here no objection was made. This Court understands Kaufman to hold that a federal prisoner may raise a claim of unconstitutional search and seizure in a § 2255 motion, but the raising of the issue does not automatically entitle a prisoner to a hearing or a setting aside of his conviction.

The motion to vacate is denied.