UNITED STATES of America,
Plaintiff-Appellee,

v.

Johnny BISHOP, Defendant-Appellant.

No. 20504.

United States Court of Appeals,
Sixth Circuit.

Feb. 11, 1971.

Pleaz William Mobley, Manchester, Ky., on brief for defendant-appellant.

Eugene E. Siler, Jr., U. S. Atty., William D. Kirkland, Asst. U. S. Atty., Lexington, Ky., on brief for plaintiff-appellee.

Before WEICK and EDWARDS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

We consider the appeal of Johnny Bishop from a judgment, entered upon a jury verdict returned in the United States District Court for the Eastern District of Kentucky, convicting him of an indictment's charge that, on or about March 21, 1969, he had:

"received and concealed a stolen motor vehicle, to-wit, a 1968 Corvette, which was moving as, was a part of and which constituted interstate commerce, from Lebanon, in the State of Ohio, to Clay County, in the Eastern District of Kentucky, knowing same to have been stolen,"

in violation of Title 18, U.S.C. § 2313.

This prosecution arose from the same transaction in which appellant's brother, Jobie Bishop, stole in Ohio and transported to Kentucky the 1968 Corvette mentioned in the above indictment. Jobie Bishop's conviction for such offense, upon a separate trial, has been sustained by this Court. United States v. Bishop, 434 F.2d 1284 (6th Cir., 1970). We held that the evidence in that case was sufficient to permit a jury to find that Jobie had transported the Corvette to Kentucky where its motor was removed and its chassis burned. The arresting officers found the motor in the possession of appellant Johnny Bishop and the burned chassis on a river bank about three miles from the farm home of Leon Bishop, father of Jobie and Johnny. Jobie Bishop testified at

his own trial as well as at Johnny's. Johnny did not take the stand at either trial.

The evidence at both trials established the theft of the Corvette at Lebanon, Ohio, and its discovery in Clay County, Kentucky. Jobie denied stealing the vehicle. It was his story that the motor found in Johnny's possession had been brought by him to Johnny for the purpose of having it installed in the chassis of a 1959 Corvette already owned by Jobie. He said that he purchased the motor—the engine block—from a used car dealer in Lebanon and carried it to Clay County, Kentucky, in the trunk of his own Chevrolet car. At both trials Jobie disclaimed any connection with or knowledge of the burned Corvette chassis found near his father's home. The government's proofs, however, clearly established that the engine block found in Johnny's possession and the burned chassis both belonged to the stolen 1968 Corvette.

The question involved on appeal is the sufficiency of the evidence to warrant submission of appellant's guilt to the jury.

We affirm.

In addition to Johnny's receiving and possessing the stolen engine block, there was evidence that he told one of the arresting officers that his brother had said the motor was "hot" and that he had understood that it had been stolen. Appellant denied making such admissions, but a factual issue for the jury's resolution was made. There was, however, no *direct* evidence that appellant Johnny Bishop ever had possession of the chassis of the stolen Corvette or had any knowledge of it. In our opinion in Jobie's case, we held in effect that transportation, possession or concealment of one part of a motor vehicle does not constitute violation of the Dyer Act. We said:

"Even considering the broad congressional purpose of the Dyer Act, United States v. Turley, supra, [352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430] it cannot be said that an engine block, taken by itself may be fairly encompassed within the wording of 18 U.S.C. §§ 2311, 2312 (1964)." United States v. Bishop, 434 F.2d 1284 (6th Cir. 1970).

In Jobie's case there was no direct evidence that he had driven the Corvette from Lebanon, Ohio, to Clay County, Kentucky. But notwithstanding our above quoted observation, we held that the total circumstances warranted submission of the question of Jobie's guilt. We said:

"A review of the full record reveals (1) admissions by the Appellant both in court and to federal agents relating to the possession, interstate transportation, and delivery of an allegedly stolen engine block; (2) a contradicted explanation of how the Appellant came to be in possession of the allegedly stolen engine block; (3) an ongoing relationship between the Appellant in Lebanon, Ohio and his father and twin brother in Clay County, Kentucky; and (4) that the allegedly stolen automobile was in working order in Lebanon, Ohio, before it was stolen and all of its major parts—not just its engine block—were found at or near the Appellant's family home in Clay County, Kentucky. We find that a jury may draw an inference that the Appellant was a party to the interstate transportation of a stolen vehicle from the admitted possession of a major part of that vehicle where such possession is accompanied by factual circumstances such as those present in the case." 434 F.2d 1284 (6th Cir. 1970).

In this case, Jobie testified that he had brought the motor down to have Johnny "change it for me," and that he, himself, did not do that kind of work in the garage where he worked in Lebanon, Ohio; that his employers "don't allow me to change no motors." He went on to say, "Johnny does all that kind of work, he always does all the work on my cars, so far as changing motors and I brought it down there and I wanted him

to put it in the Corvette for me"; that "he's changed four or five for me, if not more"; that he, himself, did not fool with changing motors, but that his brother Johnny was "skilled in taking out engines and putting in engines." He added that Johnny "does all my work for me * * * and knows how to take one motor out of a car and put another one in it," and that "he's been doing that kind of work" for some time. Jobie explained the foregoing activity as being an aid to his activity in "drag racing"; he also said that he was somewhat of a "hot rodder."

We held in Jobie's case that the jury could infer that he transported the Corvette with its motor in it. We are likewise persuaded that Johnny's usual and special function in removing motors from vehicles brought to him, as testified by Jobie, would warrant allowing a jury to find that he first received the whole vehicle and joined in the effort to conceal it by taking out the motor and burning the chassis. In reaching such conclusion, we apply the familiar rule that the government's evidence is to be viewed in its most favorable light. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Prieur, 429 F.2d 1237, 1238 (6th Cir. 1970); United States v. Decker, 304 F.2d 702, 705 (6th Cir. 1962).

Appellant's address to us makes the often repeated assertion of a claimed rule that the government's proofs "must be inconsistent with any reasonable theory of innocence." In Holland v. United States, 348 U.S. 121, 139, 75 S. Ct. 127, 99 L.Ed. 150 (1954), the Supreme Court denied the existence of such a rule. We have consistently obeyed Holland. United States v. Bradley, 421 F.2d 924, 926 (6th Cir. 1970); United States v. Burkeen, 350 F.2d 261, 266 (6th Cir. 1965); United States v. Grimes, 332 F.2d 1014, 1016 (6th Cir. 1964).

Judgment affirmed.