THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* LEON WASHINGTON, Respondent.

Second Department, January 24, 1972.

190

*Eugene Gold, District Attorney (Roger Bennet Adler* of counsel), for appellant.

*Patrick M. Wall* for respondent.

SHAPIRO, J.   In this case the Criminal Term, after a hearing, sustained the defendant's application for a writ of error *coram nobis* and set aside the judgment convicting him of the crime of murder in the first degree.   On direct appeal the judgment had been affirmed by this court and by the Court of Appeals (*People* v. *Washington,* 32 A D 2d 613, affd. 27 N Y 2d 649).

The basis for the court's determination setting aside the judgment of conviction was that a witness, Martin Anderson, perjured himself on the trial when he denied that the prosecutor had made him any promise in connection with his indictment for the possession of the gun used in the instant killing.   Upon cross-examination at the trial he testified as follows:

" Q. Has any arrangement been made between you and the district attorney's office with respect to that case concerning your testimony here?   A. No, sir.

" Q. Do you expect to be rewarded in some way for your testimony?   A. No, sir.

" Q. Has anyone given you an indication that by your testimony here, you will be helping yourself in any case?   A. No, sir.   *  *  *

" The Court:   *  *  *   Did you make any deals with the district attorney that if you testified against this man you would get off on the other case?   The Witness:   No, sir.

By Mr. Wall [attorney for defendant] :

" Q. Or you would receive some sort of favorable consideration on the other case?   A. No, sir.

" Q. Do you expect to receive any favorable treatment from the district attorney for your testimony in this trial implicating this defendant?   A. No, sir.

" Q. Either on the June indictment or the other indictment?   A. No, sir.   *  *  *

"Q. Have you had any arrangements with anybody so that you will receive the benefit of implicating this defendant? A. No, sir.

"The Court: All right. That's neither nothing was said before you made the statement that you talked about, when you talked to the district attorney and he asked you about a stenographer there, was anything said before that, or was anything said after, at either time? The Witness: No, sir.

By Mr. Wall:

"Q. At any time, sir, since February 4th of 1966, has anyone offered you anything in return for your favorable testimony to implicate him? A. No, sir."

After the defendant was convicted the People moved to dismiss the indictment charging Anderson with possession of the gun on the basis of his assistance in testifying in this defendant's case. In moving to dismiss that indictment the Assistant District Attorney (who was also the same one who had prosecuted this defendant) told the court that while no " direct " or " specific " promise had been made to Anderson he did tell him he would do what he could to help him in return for his testimony. His " dismissal statement ", which was filed in connection with the dismissal of the Anderson indictment, in pertinent part reads: " Prior to the time the instant defendant testified during the several conferences I had with him, I told him that I would try and help him in the instant case."

I agree with the statement of the District Attorney, in his brief, that " there is little in the way of praise which can be said for the Assistant District Attorney who vigorously prosecuted the defendant, but sat passively by and did not correct the erroneous testimony the witness proffered." Therefore, if the record contained nothing else it is clear that the prosecutor's conduct would necessarily require a vacatur of the judgment of conviction (*People* v. *Savvides*, 1 N Y 2d 554; *People* v. *Mangi*, 10 N Y 2d 86; *People* v. *Ellington*, 19 A D 2d 654).

The commendable rationale of those and like cases is that the People may not secure — and hold — a conviction which has been obtained by testimony which they knew, *and the defendant did not know,* to be perjured. The record in this case, however, makes it clear beyond peradventure that when Anderson gave his " no- pre-arrangement " testimony both the defendant *and his counsel* knew it to be false and deliberately refrained from disclosing that fact. In his moving papers on this *coram nobis* application the defendant stated that shortly before his trial commenced he had a conversation with the witness, Martin Anderson, who had been indicted for possession of the murder weapon, and that Anderson told him that the District Attorney

had promised him, Anderson, that "he would see what he could do to help him on the gun case under indictment #1821/66, if he would testify against" the defendant. Although the defendant says he was ignorant of the import of that statement by Anderson and therefore never informed his trial counsel that it had been made, his statement in that regard is belied by his counsel who on the hearing of this *coram nobis* application admitted that the defendant had told him of Anderson's statement.

During his testimony at the trial, in his own behalf, the following transpired:

"The Court: How often did you see Anderson after that?

The Witness: I didn't see him too regular.

The Court: How often?

The Witness: I couldn't say, your Honor.

The Court: Did you ever fight with him after that?

The Witness: No, sir.

The Court: *Any reason you could think of why he should try to accuse you of murder?*

The Witness: *Well, I know he's not loved me.*

The Court: *What?*

The Witness: *He's not in love with me.*

The Court: *I didn't ask you that. Is there any reason why he would falsely accuse you of murder?*

The Witness: *He could be trying to protect someone. I don't know.*

The Court: *But why you?*

The Witness: *I don't know.*

The Court: All right" (emphasis supplied).

It thus appears that when the defendant testified that he knew of no reason why Anderson would falsely accuse him of murder he and his counsel both knew that Anderson had received a promise of help from the prosecution if he would testify against the defendant. Having thus had an opportunity to reveal his information as to the deal Anderson had made with the prosecution and having failed to avail himself of it, is he now — having lost his case — in a position to upset the verdict rendered against him? I think not.

A case close in point of fact to this one is *Green v. United States* (256 F. 2d 483, cert. den. 358 U. S. 854). There the defendant sought postconviction relief, claiming that prior to his trial he and his codefendant, Jacobanis, overheard a conversation in the neighboring cell. The conversation was between an Assistant United States Attorney and one Roccaforte, an additional codefendant in the case. The conversation allegedly indicated that the government prosecutor had knowingly persuaded Rocca-

forte, in exchange for a light sentence and freedom from deportation problems, to testify against the defendant.

In denying the relief sought, the United States Court of Appeals stated (p. 484): " It is clear that this asserted information, of which Green was admittedly aware before he went to trial, cannot now be used as a basis for attacking the judgment of conviction."

In that case Green argued that disclosure of the arrangement of which he was aware would have required him to take the stand as a witness on his own behalf and thus would have required him to waive his privilege against self incrimination. Despite that contention the court held that he could not gamble on a favorable outcome and, when that did not eventuate, seek to supply the withheld evidence on an application to set aside the conviction. Here, that problem does not exist, for the defendant did take the stand and did himself commit perjury when he denied that he had known of the existence of any reason why Anderson should accuse him of murder.

In *Davis* v. *United States* (316 F. Supp. 913, 915) the court stated what I believe should be the applicable rule to be adopted in this State when it said: " This Court finds that the use of perjured testimony which is known by the defense to be perjured at the time of trial is not a basis for setting aside a verdict. Evans v. United States, 408 F. 2d 396 (C.A.7, 1969) following Decker v. United States, 378 F. 2d 245 (C.A.6, 1967)."

In *People* v. *Altruda* (N.Y.L.J., Dec. 2, 1964, p. 19, col. 5) I had occasion to consider the question here posed and I there said (col. 7) that: " since he [defendant] was thus possessed of evidence which could have been introduced at the trial he may not now use Stromberg's false innuendoes as a basis for coram nobis relief (People v. Russo, 284 App. Div. 763, 766; People v. Moore, 284 App. Div. 925)."

In that case, in analyzing the same cases cited by the defendant here, and set forth above, I pointed out that " in each of the cases the premise for reversal, or the ordering of a hearing, was the perpetration of a fraud upon the defendant because in each case he was ignorant of the falsity of the te 'imony given by the witness " (col. 7) but that in the case before ᜧe the defendant " having chosen not to pursue the matter further than he did  *  *  *  the choice was a voluntary one and he may not in the guise of coram nobis have a second bite of the apple " (cols. 7–8).

In our case no fraud or deception was perpetrated upon the defendant, because he knew at the trial that Anderson's " no prearrangement testimony " was false; and, as the court in

another connection said in *United States* v. *Sobell* (142 F. Supp. 515, 528, 529, affd. 244 F. 2d 520, cert. den. *sub nom. Sobell* v. *United States*, 355 U. S. 873): "Whenever knowledge was in the possession of defense counsel during trial of facts which either established the impropriety of certain evidence, or even cast doubts upon its admissibility, they are barred from raising this question on a motion to vacate judgment [p. 529]. * * * *the prosecution cannot suppress evidence or facts if they are known to the defense* " [p. 528; emphasis supplied].

A trial should of course be free of overreaching on the part of the prosecution and when such conduct has resulted in a conviction it should, without question, be set aside, but the ends of justice are poorly served when a conviction is set aside in a case where the defendant's guilt is clear beyond any reasonable doubt and where the defendant has not been misled or deceived by the perjured testimony and had it in his power to indicate its falsity.

In this case, the court in the *coram nobis* hearing, who was also the Trial Justice, said: " I can say now that testimony of this trial sans the testimony of Anderson was in my opinion sufficient to convince the jury of the guilt of this defendant beyond a reasonable doubt, and I was convinced of his guilt beyond a reasonable doubt or I would not have permitted the verdict to stand." He also said, " When I received papers from Mr. Washington [apparently the instant *coram nobis* application] * * * I was convinced, and I'm convinced of this defendant's guilt of this heinous murder "; but he nevertheless granted the defendant's application to set aside the judgment of conviction, because, in his words, " the appellate courts have, it seems to me, created a very narrow area in which a court may rule in this particular type of situation " and " there is no breadth to the decisions that would permit me to do that [deny the application]. I am still only a Court, and if that's going to be the rule, then it should be made by the Court of Appeals, or by an appellate court, and I can't make it. I would think that this is a type of case that would be justified to have that kind of ruling ".

I believe that the learned Justice at the Criminal Term was right in what he believed the rule should be. The proof of the defendant's guilt, in what the Trial Judge himself described as a heinous murder, is undisputed. The facts of the killing were directly testified to by a Mr. and Mrs. Silver, two eyewitnesses, and it seems clear to me that Anderson's testimony played little,

if any part, in the defendant's conviction, for the jury was made fully aware of his prior criminal record, of the pending gun charge and of the fact that he had consumed a large quantity of alcohol on the day of the murder.

Under the circumstances I believe that the record establishes that the prosecution's gross impropriety in withholding the disclosure of the promise made to Anderson was harmless beyond a reasonable doubt (cf. *Chapman* v. *California*, 386 U. S. 18).

To order a new trial for this guilty defendant is to exalt form above substance and to permit a defendant to benefit by his own perjury. Neither society nor a healthy respect for the law is benefited by such a ruling. The order should be reversed, on the law and the facts, and the application denied.

MUNDER, Acting P. J. (dissenting). This is a very disturbing case. The factual basis for the defendant's *coram nobis* application is set forth in the majority opinion of Mr. Justice SHAPIRO. In his oral decision on the *coram nobis* hearing, Mr. Justice McDONALD observed that the trial testimony sans the testimony of Anderson was sufficient to establish the defendant's guilt beyond a reasonable doubt. Being in accord with that view, I would prefer to adopt the conclusion reached in the majority opinion.

However, it seems to me that the majority opinion throws an unfair burden on the defense in requiring it to call the lie on the prosecution's witness who falsely denied that he had been promised some benefit for his testimony. Despite the fact that the defendant now says that Anderson informed him before the trial " that the district attorney had told him (Anderson) that he would see what he could do to help him on the gun case under indictment #1821/1966, if he would testify against petitioner," and the fact that his trial counsel, who continues to represent him here, concedes that his client had informed him of his conversation with Anderson,* the choice presented to them on the trial before the jury was indeed a Hobson's choice. With the extensive cross-examination by both defense counsel and the trial court failing to crack the witness' absolute statement of not only no promise but no suggestion of help at all, the defendant's testimony of his conversation with the witness would receive little or no credence from the jury when the prosecutor remained mute. Defense counsel in these circumstances might well share the jury's lack of belief in the story.

Mr. Justice SHAPIRO stresses such knowledge by the defendant as obviating any fraud, which he says is the basis for the rule

* (Although the defendant, in his affidavit in support of his *coram nobis* petition, says he " never told his trial counsel of Anderson's " statement to him.)

requiring the prosecutor's disclosure of a promise.  He concludes that, because the defendant perjured himself when he testified on the trial that he knew of no reason why Anderson testified as he did against him, he should not now be accorded relief.  I am not sure that the defendant's testimony was in fact perjurious.  In view of Anderson's strong and persistent testimony of no *quid pro quo,* the defendant might well have concluded that Anderson's jailhouse talk with him was simply imaginative boasting.  The defendant did not hear the prosecutor make the promise, as was the case in *Green* v. *United States* (256 F. 2d 483), cited in the majority opinion of Mr. Justice SHAPIRO.  Thus the defendant did not *know* the promise had been made and had no way of knowing whether Anderson's trial testimony was true or false.

Anderson's lie about no promise of help was not fixed until the prosecutor who had made the promise, and who tried the case, later deposed in an affidavit in support of his motion to dismiss the gun possession indictment against Anderson that in fact the promise had been made.

Like Mr. Justice McDONALD, I would rather ignore this lapse of the prosecutor in failing to reveal the promise as harmless error, particularly since the trial proof overwhelmingly established the defendant's guilt of a heinous murder.  But until the Court of Appeals limits the effect of *People* v. *Savvides* (1 N Y 2d 554) I think we are bound to rule that " the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth " and this despite the nature of the case and the strength of the proof (*People* v. *Savvides, supra,* p. 557).

In *People* v. *Adams* (21 N Y 2d 397, 402) Judge SCILEPPI quoted with approval the language of the court in *People* v. *Lombard* (4 A D 2d 666, 671) that " ' the District Attorney is an advocate, but, at the same time, he is a quasi-judicial official (*People* v. *Fielding,* 158 N. Y. 542) and his primary duty is to see that justice is done and the rights of all — defendants included — are safeguarded.  There is a positive obligation on his part to see that a trial is fairly conducted (*Berger* v. *United States,* 295 U. S. 78).' "

Therefore, the order should be affirmed.

LATHAM, J., concurs with SHAPIRO, J.; MARTUSCELLO, J., concurs in result; MUNDER, Acting P. J., dissents and votes to affirm the order, with an opinion, in which BRENNAN, J., concurs.

Order reversed, on the law and the facts, and application denied.