Owen L. LAWSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 6755.

United States Court of Appeals
Tenth Circuit.

Jan. 26, 1962.

H. G. Bill Dickey, Tulsa, Okl. (Joe Richard, Tulsa, Okl., with him on the brief), for appellant.

L. K. Smith, Asst. U. S. Atty., Tulsa, Okl. (John M. Imel, U. S. Atty., Tulsa, Okl., with him on the brief), for appellee.

Before PICKETT, LEWIS, and HILL, Circuit Judges.

PICKETT, Circuit Judge.

Owen L. Lawson was charged in a nine count indictment with violations of the Labor-Management Reporting and Disclosure Act of 1959,[1] §§ 209(c) and 501 (c), 73 Stat. 529, 536, 29 U.S.C.A. §§ 439(c) and 501(c). In a trial to the court without a jury, Lawson was found guilty as charged in counts 1, 2, 3, 8 and 9 of the indictment. Counts 1, 2, 3 and 8 alleged that on different dates Lawson embezzled funds of Pipe Fitters Local Union No. 205, Tulsa, Oklahoma, a labor organization engaged in an industry affecting commerce among the sev-

1. Sometimes hereinafter referred to as "the Act."

eral states. Count 9 alleged that Lawson wilfully concealed, withheld and destroyed certain books and financial records of the same union. The sufficiency of the evidence to show the embezzlement of the funds and the misappropriation of the records is not questioned here. It is contended that the federal district court lacked jurisdiction to try the defendant for the reasons that (1) the statute in question is unconstitutional; (2) that the evidence did not establish that the activities of Local Union 205 affected commerce within the meaning of the statute; and (3) that the district court lost jurisdiction to try the defendant when he appeared in response to a subpoena and gave testimony before a grand jury concerning the matters which were charged in the indictment.

Section 501(c) of the Act provides:

"Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both." 73 Stat. 536, 29 U.S.C.A. § 501(c).

Section 209(c) of the Act provides:

"Any person who willfully makes a false entry in or willfully conceals, withholds, or destroys any books, records, reports, or statements required to be kept by any provision of this subchapter shall be fined not more than $10,000 or imprisoned for not more than one year, or both." 73 Stat. 529, 29 U.S. C.A. § 439(c).

A "labor organization" is defined in § 3 (i) of the Act, 73 Stat. 520, 29 U.S.C.A. § 402(i), as one "engaged in an industry affecting commerce and includes any organization of any kind * * * dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, * * *." "Industry af-

fecting commerce" is said to mean "any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry 'affecting commerce' within the meaning of the Labor Management Relations Act, 1947, as amended, * * *." § 3(c), 73 Stat. 520, 29 U.S.C.A. § 402(c).

In announcing its findings and declaring the purpose and policy of the Labor-Management Reporting and Disclosure Act, Congress stated that "relations between employers and labor organizations and the millions of workers they represent have a substantial impact on the commerce of the Nation;" and that to assure the "free flow of commerce it is essential that labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering" their affairs. The need for the legislation is contained in congressional findings to the effect that investigations had revealed "instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct" which required supplemental legislation to protect the "rights and interests of employees and the public generally as they relate to the activities of labor organizations, employers, labor relations consultants, and their officers and representatives." Congress also found and declared that the Act was necessary to eliminate and prevent improper practices in the labor management field "which distort and defeat the policies of the Labor Management Relations Act, 1947, as amended, * * * and have the tendency or necessary effect of burdening or obstructing commerce by (1) impairing the efficiency, safety, or operation of the instrumentalities of commerce; (2) occurring in the current of commerce; (3) materially affecting, restraining, or controlling the flow of raw materials or manufactured or processed goods into or from the channels of commerce, or the prices of such materials or

goods in commerce; or (4) causing diminution of employment and wages in such volume as substantially to impair or disrupt the market for goods flowing into or from the channels of commerce." § 2, 73 Stat. 519, 29 U.S.C.A. § 401.

■ The constitutionality of legislation designed to protect interstate commerce and dealing with labor relations in order to remove burdens from and obstructions to the free flow of commerce is now settled. N. L. R. B. v. Fainblatt, 306 U.S. 601, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014; N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893. In upholding the validity of § 9(h) of the National Labor Relations Act, as amended by the Labor Management Relations Act, 1947, 61 Stat. 146, 29 U.S.C.A. § 159(h), commonly referred to as the "non-Communist affidavit provision," the Supreme Court said, in American Communications Ass'n v. Douds, 339 U.S. 382, 387, 70 S.Ct. 674, 678, 94 L.Ed. 925:

"The constitutional justification for the National Labor Relations Act was the power of Congress to protect interstate commerce by removing obstructions to the free flow of commerce. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352 (1937). That Act was designed to remove obstructions caused by strikes and other forms of industrial unrest, which Congress found were attributable to the inequality of bargaining power between unorganized employees and their employers. It did so by strengthening employee groups, by restraining certain employer practices, and by encouraging the processes of collective bargaining."

Recognizing the constitutional power vested in Congress to regulate labor management matters affecting commerce in the manner described in § 2(c) of the Act, 73 Stat. 519, 29 U.S.C.A. § 401(c), we conclude that the criminal remedies provided in §§ 209(c) and 501(c), 73 Stat. 529, 536, 29 U.S.C.A. §§ 439(c) and 501(c), bear a reasonable relation to the nefarious conditions which Congress found to exist and sought to reach. American Communications Ass'n v. Douds, supra; United States v. Haverlick, N.D.N.Y., 195 F.Supp. 331. Congress was free to find that corruption of union officials and a lack of the highest standards of ethical conduct by those representing unions, factors which would necessarily weaken the position of the unions and have a deterring influence on the bargaining position of labor and management, would substantially affect the free flow of commerce. The statute purports to reach only the activities of union officials which are deemed to burden or obstruct commerce. "Acts having that effect are not rendered immune because they grow out of labor disputes." N. L. R. B. v. Jones & Laughlin Steel Corp., supra, 301 U.S. at page 29, 57 S.Ct. at page 621.

■■ Lawson asserts that the evidence is insufficient to establish that the activities of the union, whose funds he embezzled, and whose books he destroyed, affected or obstructed interstate commerce. The record shows that the union, an affiliate of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, after an election conducted by the N.L.R.B. pursuant to the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. § 157, was duly certified by the board as the exclusive representative of all employees in the Union for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment, and other conditions of employment. This is sufficient to establish the required relationship with interstate commerce under § 3(j) of the Act, 73 Stat. 521, 29 U.S.C.A. § 402(j), which says, in substance, that a labor organization which has been certified, or is affiliated with an organization that has either been certified or represents employees in an industry affecting commerce "shall be deemed to be engaged in an industry

affecting commerce." Lawson attacks the constitutionality of this presumption, but, even in a criminal case, since the fact presumed bears a reasonable relationship to the fact proved, it would only be unconstitutional if it were construed to preclude any showing by the defendant that the labor organization of which he was an officer was not engaged in an industry affecting interstate commerce. Cf. Casey v. United States, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632; Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; Mobile, J. & K. C. R. R. v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78; Griego v. United States, 10 Cir., 298 F.2d 845. We do not think that such a construction is required, choosing instead to believe that in any prosecution brought under these provisions a defendant will be accorded the opportunity to prove that his labor organization is not engaged in an industry affecting interstate commerce as Lawson attempted to do here. The government did not rely exclusively on the presumption in this case, however, but it also proved that the Union was a party to a typical collective bargaining contract between an association representing the plumbing and heating contractors in the 9-county area, as employers, and the Greater Tulsa District Council No. 23, composed of Plumbers Local No. 176 and Local No. 205, having to do with wages and other working conditions in the same area. The services performed by the union members for the employers necessitated the use of mechanical equipment and the installation of plumbing fixtures in construction of all types, including some oil refineries. The evidence discloses that much of the equipment and many of the fixtures were shipped into the State of Oklahoma, and if a labor dispute had caused a work stoppage the purchase and shipment of these materials would necessarily have been curtailed. These facts are sufficient to satisfy the mandate that the activities of the industry in which members of a union are employed must have a substantial effect on commerce. N. L. R. B. v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; International Brotherhood of Electrical Workers v. N. L. R. B., 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299; Local 74, United Brotherhood of Carpenters & Joiners v. N. L. R. B., 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309; Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122; N. L. R. B. v. Fainblatt, 306 U.S. 601, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014; N. L. R. B. v. Tri-State Cas. Ins. Co., 10 Cir., 188 F.2d 50.[2]

■ There is no merit to the contention that the conviction should be reversed because Lawson was compelled to give testimony against himself before a grand jury in violation of his constitutional rights. It appears from discussions between counsel and the court that after consulting with his attorney Lawson testified before the grand jury considering charges against him. There is no proof as to what his testimony consisted of, or that it was not given voluntarily, or that he was not adequately warned of his constitutional rights.

Affirmed.

2. In N. L. R. B. v. Tri-State Cas. Ins. Co., 188 F.2d 50, 52, this court said:

"Whether, therefore, the respondent's interstate activities affect commerce is not to be judged by their quantitative relationship to the whole of its business activities. Nor, is it decisive that the labor dispute in this case is wholly between employees performing purely local activities. The Act extends to and was explicitly designed to regulate not merely interstate transactions, but all activities which in their totality adversely affect the full flow of interstate commerce. See N. L. R. B. v. Fainblatt, supra; United Brotherhood of Carpenters [and Joiners] v. Sperry, supra, [10 Cir., 170 F.2d 863]. The touchstone of jurisdiction is the ultimate effect on commerce, and our query is whether the acts or practices of the respondent would lead or tend to lead to a labor dispute with its service employees, which would obstruct or burden the respondent's interstate activities."