**UNITED STATES of America**

v.

**Peter LYNCH, Appellant.**

**No. 15491.**

United States Court of Appeals
Third Circuit.

Argued April 12, 1966.

Decided Oct. 3, 1966.

Frederick Klaessig, Jersey City, N. J., for appellant.

Donald Horowitz, Asst. U. S. Atty., Newark, N. J., (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before McLAUGHLIN, GANEY and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

James Callahan and Peter Lynch were charged in a nine-count indictment with having embezzled, on several occasions, funds belonging to Local No. 1, Checkers, Clerks and Talleymen's Union, I. L. A., AFL-CIO, in violation of § 501(c) of the Labor-Management Reporting & Disclosure Act, 29 U.S.C.A. § 501(c).[1] Callahan was one of the local's three secretary-treasurers, and Lynch was one of its eight elected business agents. Their jurisdiction extended over the waterfronts of New Jersey. Callahan died prior to trial. Lynch, who went to trial in December of 1964, was found guilty by a jury on the ninth count of the indictment and not guilty as to the seventh and eighth, which charged the same offenses only at different times. After denying his alternative motions for arrest of judgment[2] and a new trial, the court sentenced him to prison for six months. He appealed.

His first claim here, is that the evidence was insufficient to support the charge under Count IX. That count charged that on or about April 5, 1963, at Hoboken, New Jersey, Lynch, while a business agent of Local No. 1, did willfully "embezzle, steal, abstract and convert to his own use the sum of $170" belonging to the local.[3] Thus, the prosecution must have shown, not only that Lynch collected the $170, which was an initiation fee, belonging to the local, but that he willfully converted it to his own use.[4] See Taylor v. United States, 320 F.2d 843, 850–851 (C.A. 9, 1963). There

was no direct proof that he retained the $170. The prosecution maintains that the jury was free to infer that Lynch willfully converted the $170 payment to his own use from the circumstances under which he received the money and the fact that the local's membership records did not mention Anthony Gentile, the name of the waterfront worker who paid the money to Lynch, or note any receipt of the $170.

Gentile testified that he desired to become a member of the local, that Lynch told him it would cost $200 in cash to join, that he borrowed that amount, that sometime in 1963 he paid it to Lynch and in return received from him a membership dues booklet wherein he was credited with having paid $30 for six months dues, and that he did not get a receipt for the remainder of $170, the initiation fee. The dues booklet contained the number 4447 which supposedly referred to the page of the local's ledger book in which the notation of Gentile's dues payments would be recorded. As of the time of trial, the local's membership roll did not list Gentile as a member and its records did not reflect that any money had been collected from him.

The constitution of the local set the initiation fee at $500 and required all applicants for membership "shall appear before the membership at a regular meeting prior to their being accepted." In practice, however, the formalities were not followed and the $500 limit was not enforced. The amount charged was left to the discretion of the secretary-treasurer or whatever the traffic could bear. In a number of instances, in order to

---

1. The first six counts were against James Callahan, while the remaining three involved Peter Lynch. Except for dates, cities and, in some instances, the sum of money involved, all nine counts were identical. Counts II and III each asserted that the offense occurred at Port Newark, N. J., while the remaining counts claim that they took place in Hoboken, N. J.

2. The motion should have been labeled as one for judgment of acquittal.

3. In pertinent part § 501(c) provides: "Any person who embezzles, steals, or

unlawfully and willfully abstracts or converts to his own use * * * any of the moneys * * * of a labor organization of which he is an officer * * * shall be fined not more than $10,000 or imprisoned for not more than five years, or both."

4. The trial judge charged the jury to consider the word "steal" in the indictment as surplusage. Counsel for Lynch at first excepted to this instruction but later acquiesced in its being given and, accordingly, it was not error.

increase membership and service the loading and unloading of ship cargo, no initiation fee was charged to new members.

Frank L. McCarthy, the senior secretary-treasurer of the local, informed the jury that although the local's constitution did not authorize them to do so, business agents did collect dues and initiation fees. According to his testimony, when Lynch collected the money from Gentile it became Lynch's duty to turn it over to Callahan, the secretary-treasurer of Local No. 1 for the area of New Jersey, and report the fact to him that $30 of the $200 represented union dues and $170 initiation fees. It was then Callahan's job to transport the money, along with a day sheet denoting the person from whom the money was received in the first instance, to the main office in New York City where the books of the local, over which Lynch had no control, were kept. There entries would be made on the appropriate numbered dues card or page bearing the name of the particular dues paying member. The money would be deposited in the local's bank account by Mrs. Albina Livsey, secretary of the local. It was stipulated that if certain witnesses were called they would testify that they paid money directly to Callahan as initiation fees for membership in Local No. 1 during January, March and April of 1963. An examination of the books and records in evidence, however, showed no such entries.

■ What may be inferred from these facts? It is possible that Lynch did retain $170 out of the $200 handed him by Gentile. But a defendant is not to be convicted on a possibility alone. It is also possible that Callahan received the money from Lynch but either by inadvertence, carelessness or design never turned it over to the New York office. The prosecution did not attempt to prove that Callahan, the one to whom Lynch should have transferred it, did not receive the money. The prosecution cannot be heard to argue that the latter situation is highly improbable. It accused Callahan of also having embezzled funds (ini-

tiation fees) of the local, and at the trial the prosecuting attorney told the jury there was no doubt in his mind that he was a crook where initiation fees were concerned. Moreover, in the early part of 1963 Callahan was ill from cancer of the stomach. It is also possible that Callahan or someone else placed the money in the local's treasury without a specific notation having been made as to its origin. Here, again, the prosecution made no attempt to prove that the money never reached the local's bank account.

The fact that Lynch asked for cash is not inconsistent with innocence. There is a large turnover of employees on the waterfront. It is probably greatest with beginners. A man may desire to work a week or two and then move on. For this privilege he might be willing to sign a check when he has insufficient funds to cover it. In addition, the local may have desired to put these fees, as adverted to above, in a general fund without designating from whence it came.

A presumption that the amount of the initiation fee, if it had been received by Callahan or some other secretary-treasurer, would have been recorded in the books of the local never arose in this case. The evidence was the other way. With the exception of his admission that he received the $200 from Gentile, Lynch's testimony did not aid the prosecution's case, since he claimed that he turned the money over to Callahan.

■ Under the circumstances, we think the inference that Lynch converted the money to his own use is one which the jury should not have been permitted to draw because it was too tenuous. Cf. United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965). Consequently, the trial court erred in not allowing Lynch's motion for judgment of acquittal.

■ In any event, we think the trial court erred in denying his motion for a new trial. Prior to trial the Bi-State Waterfront Commission of New York Harbor investigated, inter alia, the hiring practices on the waterfront, condi-

tions precedent to becoming a member of Local No. 1, and what was done with funds collected on behalf of the local. One of the men in charge of the investigation was Anthony Piazza, assistant counsel for the Commission. As a rebuttal witness on behalf of the prosecution, Piazza testified that in the past eighteen months he spoke to approximately 2500 checkers, time keepers and baggage clerks. In answer to the question whether on the basis of his conversations with these harbor workers he had any knowledge as to the reputation of Lynch for honesty, truth and veracity, he said: "His reputation on the waterfront from the people I have spoken to is that he is a thief." No exception was taken to this statement. In his summation, the attorney for the prosecution stated: "Out of the hundreds of people that Mr. Piazza interviewed and told him that they gave money to the defendant * * *." At this point Lynch's motion for a mistrial on the ground that there was no testimony to support the quoted statement that hundreds of people gave him money was made, but it was overruled. However, the trial judge, recognizing that the remark was erroneous and prejudicial, admonished the jury to disregard any reference to initiation fees other than those pertaining to the last three counts. Count nine, as has been set out, was the count on which Lynch was convicted, and seven and eight were the counts containing the same averments against Lynch, but on different dates. The court also charged the jury later on that the statement should have never been made and that they should not consider it in their deliberations.

Lynch claims that the statement was so prejudicial that its effect could not be eradicated from the jury's mind by an instruction to ignore it. The trial judge, in effect, nullified the instruction to ignore the remark, since he also instructed the jury that in connection with their determining Lynch's character they should take into consideration the testimony by Piazza on behalf of the prosecution as to the reputation of Lynch on the waterfront. Since Piazza testified Lynch had the reputation of being a thief, it made it exceedingly difficult, if not impossible, to eradicate from their minds that he took money from many longshoremen, since the statements complemented each other.

Character evidence is supposed to be confined to the witness's opinion as to the subject's general repute or reputation. Such opinion must be based on hearsay. Michelson v. United States, 335 U.S. 469, 477–478 (1948). However, the inevitable impression left with the jury by Piazza's testimony, after they heard the statement made by the prosecuting attorney, was that Lynch committed independent acts similar to those for which he was indicted instead of merely having a bad reputation. This is so because Lynch could not have the reputation on the waterfront of being a thief unless the workers believed that he pocketed initiation fees.

Additionally, the trial judge in telling the jury to disregard payments of initiation fees other than those under the last three counts, inadvertently failed to make any mention concerning those initiation fees paid Callahan. This failure to do so may have deprived Lynch of his main defense. The jury, forewarned that Callahan received initiation fees and such amounts were not recorded in the local's books, might have been inclined to lend credence to Lynch's testimony.

Moreover, the prosecuting attorney made statements to the jury which were without foundation in fact. For example, he said that Lynch's character witnesses were intimidated by him into testifying in his favor; that witnesses, other than Piazza, were afraid to come into court to testify as to Lynch's true reputation, and that Lynch was opposed to amalgamation back in 1957 of the local in which he had served as business agent with Local No. 1 because he wanted no interference with his criminal activities.

Accordingly, the judgment will be reversed and the matter remanded with instructions to allow appellant's motion for judgment of acquittal.