**UNITED STATES of America**

v.

**John STUBIN, Appellant.**

**No. 19561.**

United States Court of Appeals, Third Circuit.

Argued May 18, 1971.

Decided July 15, 1971.

458

B. Todd Maguire, Wilkes-Barre, Pa. (Arthur A. Maguire, Wilkes-Barre, Pa., on the brief), for appellant.

Laurence M. Kelly, Asst. U. S. Atty., Scranton, Pa. (S. John Cottone, U. S.

Atty., Scranton, Pa., on the brief), for appellee.

Before SEITZ, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

During the years 1961 through 1964, John Stubin was Secretary-Treasurer of Local 158, International Hod Carriers, Building and Common Laborers' Union of North America. The Local represents laborers engaged in heavy construction such as the erection of pipelines and related projects. Pursuant to a contract between the Union and various employers, union dues and initiation fees were collected by the companies from their employees and delivered to the Union. Under the Union's constitution all such dues were to "be turned over to the Secretary-Treasurer, who shall give proper receipt therefor." Stubin was required by the Union constitution to keep proper records of the dues, to deposit the money in an account held in the name of the Union, and to arrange for periodic audits of the Union's records.

A grand jury convened in the Middle District of Pennsylvania indicted Stubin on twenty-four counts. The first nineteen counts charged him with having embezzled approximately $37,000 from the Union in violation of the Labor-Management Reporting and Disclosure Act of 1959. 29 U.S.C.A. § 501(c).[1] In addition, Stubin was charged in counts twenty through twenty-two with having made false statements, in violation of 29 U.S.C.A. § 439(b),[2] in a report signed by Stubin and filed with the Secretary of Labor. Count twenty-three charged that Stubin failed to maintain union records crediting the members with dues paid to the Union as required by 29 U.S.C.A. § 436.[3] The last count, twenty-four, charged that Stubin failed to keep Union records and made false entries in records in violation of 29 U.S.C.A. § 439(c).[4] After a jury trial, Stubin was convicted of the crimes in all twenty-four counts and was sentenced to a three-year term in prison.

The evidence adduced at trial demonstrated a pattern of criminal acts extending throughout the years 1962–64. Union dues collected by various employers working in Pennsylvania pursuant to a contract with Stubin's Local Union were mailed or delivered to Stubin's office. Some of the dues money was in the form of checks, but a substantial portion was in cash. Sarah Hoyer, an employee of the Union working in Stu-

---

1. 29 U.S.C.A. § 501(c). Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

2. 29 U.S.C.A. § 439(b). Any person who makes a false statement or representation of a material fact, knowing it to be false, or who knowingly fails to disclose a material fact, in any document, report, or other information required under the provisions of this subchapter shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

3. 29 U.S.C.A. § 436. Every person required to file any report under this sub-

chapter shall maintain records on the matters required to be reported which will provide in sufficient detail the necessary basic information and data from which the documents filed with the Secretary may be verified, explained or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, and applicable resolutions, and shall keep such records available for examination for a period of not less than five years after the filing of the documents based on the information which they contain.

4. 29 U.S.C.A. § 439(c). Any person who willfully makes a false entry in or willfully conceals, withholds, or destroys any books, records reports, or statements required to be kept by any provision of this subchapter shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

bin's office, testified that the established procedure during the relevant years was that dues payments received, including both cash and checks, were delivered to Stubin, and Stubin supervised the making of bank deposit slips and pertinent accounting entries in the Union's books. During 1962 entries in the Treasurer's Daybook were made solely by Stubin, and during 1963–1964, the entries were made by Stubin and Miss Hoyer. A substantial amount of money, approximately $37,000, was collected by the Union during the period covered by the indictment, but never deposited in the Union's bank account. The fact that such funds had been misappropriated was concealed by entering incorrect totals of receipts in the Union's records. Although Stubin was responsible for having periodic audits made of the Union's books, no audit was conducted, and consequently an early discovery of the fact that Union funds were missing was prevented.

Stubin assigns nine separate errors, contending that each is sufficient to require reversal. These allegations of errors may be divided into three categories—(1) the insufficiency of the evidence; (2) the improper division of the indictment into twenty-four separate counts; and (3) evidentiary and procedural errors at trial.

█ The principal argument made by Stubin, and the one we consider has the greatest force, is that the trial court erred in refusing to grant Stubin's motion for a judgment of acquittal. In this regard, we are mindful that in reviewing the evidence we must draw in favor of the Government all the inferences reasonably consistent with the evidence. Noto v. United States, 367 U.S. 290, 296–297, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1961); United States v. Grasso, 437 F.2d 317, 320 (3rd Cir. 1970); United States v. Schwartz, 390 F.2d 1, 2 (3rd Cir. 1968).

Although Stubin did not refer in his argument to United States v. Lynch, 366 F.2d 829 (3rd Cir. 1966), we think that decision deserves comment because in it

this Circuit had occasion to consider the adequacy of proof supporting a conviction of embezzlement of Union funds in violation of 29 U.S.C.A. § 501(c), a charge indentical to the one made against Stubin. Judge Ganey, writing for a unanimous panel, found the proof presented to the jury to have been inadequate to support the jury's ultimate verdict. The evidence demonstrated that Lynch had collected cash from a prospective union applicant as an initiation fee and for dues paid in advance. After receiving the money, it was Lynch's responsibility as a union business agent to give it to one Callahan, the Secretary-Treasurer, who in turn had the duty to take the money to the Union's office where the Union maintained its records. However, no entries representing the initiation fee nor the advance dues were recorded in the appropriate Union records. The Court, therefore, concluded that since the Government failed to introduce any evidence from which the jury might have concluded that Lynch had not transferred the money to Callahan, Callahan rather than Lynch might have been responsible for the failure to record receipt of the money in the Union's books. Furthermore, the Government in *Lynch* failed to prove that the money in question had not been deposited in the Union's bank account. Thus, in *Lynch*, the evidence revealed only a "possibility" that the defendant had kept the money for himself, and the Court found that the evidence was likewise consistent with the "possibilities" that Callahan might have embezzled the money, or that the money had been deposited in the Union's bank account, but through carelessness no record was made of this transaction.

Comparison between the present case and *Lynch* demonstrates that the evidence against Stubin was far greater than that against Lynch. Here, the Government introduced evidence capable of supporting the inference that Stubin had willfully converted the Union's money to his own use. Through an exhaustive audit of the Union's records, the Govern-

ment demonstrated that a certain amount of money, representing initiation fees and dues, was received by Stubin's office, that a substantially lesser amount was eventually deposited in the Union's bank account, that the Union's records were falsified to hide the discrepancies between receipts and deposits, that Stubin as Secretary-Treasurer of the Union was responsible for supervising records and deposits, and finally that such records were in fact made under his direction, often by himself as evidenced by handwriting analysis. Clearly, the evidence is substantially stronger than the evidence in *Lynch*.

■ The question, however, remains whether the evidence here is sufficient. There can be no doubt, as asserted by Stubin, that he was convicted on evidence predominantly circumstantial. Circumstantial evidence, however, may support a jury's finding of guilt. See e. g., United States v. Powell, 413 F.2d 1037 (4th Cir. 1969); Taylor v. United States, 320 F.2d 843 (9th Cir. 1963); *Compare* United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).

The facts of the present case are far closer to Doyle v. United States, 318 F. 2d 419 (8th Cir. 1963) than they are to *Lynch*. In *Doyle* the evidence, all circumstantial, demonstrated that the defendant was primarily responsible for keeping records of dues received from union members and depositing such money in the bank. And just as Stubin's co-workers occasionally performed record-keeping activities, in *Doyle* entries were made in the Union's books by clerical workers under Doyle's direction. The facts underlying the *Doyle* decision are closely analogous to those presented here. As stated in *Doyle:*

"No one saw the appellant take any part of the missing funds and she denies having done so. It was, nevertheless, for the jurors, as the finders of the facts, to weigh the evidence pro and con, to draw inferences reasonably supported by the evidence and in the end to say whether the government had established Mrs. Doyle's guilt beyond a reasonable doubt." 318 F.2d at 424.

Stubin argues further, in support of his contention that the evidence is insufficient, that the record is devoid of evidence from which the jury could reasonably find that Local 158 is a "labor organization," as defined in the Act. Section 402(i) of the Act provides:

"Labor organization 'means a labor organization engaged in an industry affecting commerce * * *'"

Moreover, 29 U.S.C.A. § 402(j) provides that:

"A labor organization shall be deemed to be engaged in an industry affecting commerce if it— * * *

(2) Although not certified [as a representative of employees under the provisions of the National Labor Relations Act], is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce * * *."

And § 402(c) defines "industry affecting commerce" as "* * * any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce * * *."

In Lawson v. United States, 300 F.2d 252 (10th Cir. 1962), the Tenth Circuit decided where the record revealed that union members had engaged in construction necessitating the use of mechanical equipment, a federal court had jurisdiction to entertain a criminal prosecution under the Labor-Management Reporting and Disclosure Act. The court in *Lawson* also pointed out that a work stoppage would have curtailed the flow of commerce into Oklahoma, the home state of the local union, and therefore the Union was within the statutory definition. Here, the officers of two pipeline construction companies employing members of Local 158 testified that each of their

respective companies erected pipelines throughout the country and that their home offices were located in states other than Pennsylvania. On such a record, there is no doubt that the jury could have reasonably found Local 158 to come within the statutory definition.

Stubin's second contention is that the first nineteen counts of the indictment were multiplicitous in that they charged him with nineteen separate embezzlements over a three year period, when his conduct, it is contended, at most constituted a single, continuing transaction. He urges that Congress did not intend that each individual embezzlement should be treated as a separate crime, but rather that Congress sought only to prohibit the breach of a union officer's fiduciary duty and that "the amount of money taken * * * is immaterial" to that purpose.

Before considering such contention, we note that the Government's method of dividing the indictment into different counts may be somewhat unusual. Counts one through sixteen each charge a separate embezzlement of the Union's funds, each count relating to a particular day and a particular act. Counts seventeen through nineteen lump together all the embezzlements made during a single year that were *not charged in the prior counts*. For example, count one charged that on November 30, 1962, Stubin embezzled $5,776.32 from the Union, and count seventeen charged that between January 1, 1962 and December 31, 1962 Stubin embezzled an additional $10,737 from the Union. The indictment itself did not explicitly specify that the embezzlements charged in counts seventeen through nineteen were in addition to those charged in counts one through sixteen. However, during the trial, the Government repeatedly explained to the Court and opposing counsel that counts seventeen through nineteen charged embezzlements separate and distinct from those alleged in the first sixteen counts, and the evidence brought forth supported such theory.

■ Although we have doubt about the wisdom of such a method of indictment, nonetheless it appears that the indictment was not improperly drawn. In United States v. Ketchum, 320 F.2d 3 (2nd Cir. 1963), the defendant, a federal employee, was charged in a nine count indictment with accepting bribes. The first eight counts were grounded upon eight separate instances of payments to the defendant. The ninth count alleged a conspiracy to accomplish the substantive crimes contained in the prior counts. Before the commencement of the trial, the district court dismissed counts two through eight on the ground that in the view of the trial judge each of the eight payments was an installment of a single bribe. Judge Friendly on behalf of a unanimous panel reversed the dismissal, because the language of each count of the indictment was sufficiently broad so that the Government might consistently prove each payment was a bribe for a separate service by the defendant. 320 F.2d at 7. In reaching this result, Judge Friendly stated, "Moreover, even if it were far clearer than it now is that the Government's evidence would necessarily be limited as the judge thought, and if we should agree with his construction of the statute as permitting only one punishment in that event, dismissal of Counts 2–8 was still unwarranted." 320 F.2d at 8. Therefore, it appears that the present indictment, though inelegantly drawn, constituted a permissible method of charging the defendant with the relevant crimes, particularly when at trial the Government presented evidence from which the jury could rightfully have found that none of the counts was premised upon overlapping transactions.

■ We turn now to the argument strenuously advanced by Stubin to the effect that the allegedly separate embezzlements in fact constituted a continuing transaction and therefore only a single crime. The Sixth Circuit has considered this issue and has decided that each act of embezzlement in violation of the Labor Management Disclosure and Report-

ing Act is a separate and distinct crime. Decker v. United States, 378 F.2d 245, 247 (6th Cir. 1967). We agree with the *Decker* court that each separate act of embezzlement constitutes a distinct offense and is chargeable as a separate crime. *See* Blockburger v. United States, 284 U.S. 299, 302, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *compare* United States v. Universal C. I. T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952).

This Circuit held in United States v. Alaimo, 297 F.2d 604, 605–606 (1961), that a criminal statute[5] similar to the one now before this Court, forbade "each performance of the * * * act," rather than a course of conduct. In view of our decision in *Alaimo* and the Sixth Circuit's holding in *Decker, supra,* we agree it was proper to indict Stubin for nineteen separate acts of embezzlement.

We turn now to the numerous allegations of error made by Stubin regarding the conduct of the trial.

Stubin alleges that it was error to permit the Government to cross examine its own witness, Miss Sarah Hoyer. During the trial, the Government called Miss Hoyer to testify. Miss Hoyer was a clerical employee of the Union, working under Stubin's direction during the years covered by the indictment, and at the time of trial Miss Hoyer remained in the employ of the Union. Her testimony, vital to the Government's case because of her first-hand knowledge of Stubin's conduct, appears evasive and uncooperative even on the cold record. Indeed, the trial judge stated for the record:

"In my seven years on the bench, this is the most recalcitrant, hostile, unwilling witness I have ever seen in Court. It is obvious that she is testifying under strain. She is presently employed by the Local of which the defendant is the Secretary-Treasurer. At any rate, I have observed her demeanor and I have observed things which do not appear on the record such as hesitation and so forth. I am convinced she is a hostile witness. * * * *"

■ At least as early as St. Clair v. United States, 154 U.S. 134, 150, 14 S. Ct. 1002, 38 L.Ed. 936 (1894), a reluctant and hostile witness has been subject at the trial court's discretion to cross-examination by the party calling such witness. Roberson v. United States, 249 F. 2d 737 (5th Cir. 1957); *see* United States v. Barrow, 229 F.Supp. 722 (E. D.Pa.1964), affirmed 363 F.2d 62, cert. denied, 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541; 2 Wright, Federal Practice and Procedure § 415. Under the present record, and in view of the court's assessment of her demeanor, we find no abuse of discretion in permitting the Government to cross-examine Miss Hoyer. See Rotolo v. United States, 404 F.2d 316, 317 (5th Cir. 1968); Esco Corp. v. United States, 340 F.2d 1000, 1005 (9th Cir. 1965); Neville v. United States, 272 F.2d 414, 416 (5th Cir. 1959); Di Carlo v. United States, 6 F. 2d 364, 367–368 (2nd Cir. 1925). In addition, Stubin suggests that the district court permitted the Government to *impeach* Miss Hoyer. But Stubin has apparently confused "impeachment" with cross-examination of a "hostile witness." A reading of the record reveals that the trial court permitted the Government only to cross-examine Miss Hoyer, and we can find no instance in the record of an attempt by the Government to impeach its own witness.

■ At trial the Government introduced an almost overwhelming amount of documentary evidence, as is often necessary in a case of this nature when the acts of embezzlement must be reconstructed from books and accounts pre-

5. The Taft-Hartley Act, 29 U.S.C.A. § 186(b), provides:
   "It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value."

pared under the defendant's supervision. In order to make such evidence comprehensible to the court and jury, the Government prepared a summary of the documentary evidence. An accountant employed by the Government, Mr. Flanagan, testified that he and six to eight other investigators prepared the summaries in question. He further testified regarding the method employed to prepare the summaries introduced. Flanagan was available for cross-examination by the defense regarding the accuracy of the summaries. Were there distortions or errors in the summaries the defense might have brought such inaccuracies to the jury's attention, particularly since the underlying documents had been available to the defense long before the trial. Had it been deemed necessary, a continuance might have been requested so that the defense might have carefully examined the Government's summaries. However, at trial, Stubin did not challenge the accuracy of the summaries introduced, but on appeal, he now states a proposition of law, for which he cites no case authority, to the effect that all eight persons who prepared the summaries must testify in order for the summaries to be admissible. Since the primary records from which the summaries were prepared were introduced into evidence, the Government's summary of that evidence is admissible. United States v. Willis, 322 F.2d 548, 551 (3rd Cir. 1963); see 4 Wigmore, Evidence § 1230 (3rd ed.).

■ Stubin's next assignment of error—that his counsel was not permitted to cross-examine a Government witness, Patrick Dooner, regarding a subject *not* raised on direct examination—is invalid. The trial court did not err in this ruling, because the question posed by Stubin's counsel was irrelevant to the prior direct examination. If Stubin believed Dooner had possession of information helpful to the defense, he might have been called as a defense witness, and if hostile to the defense, cross-examined as the trial court permitted the Government to do with Miss Hoyer. United

States v. Stoehr, 196 F.2d 276, 280–281 (3rd Cir. 1952).

■ At trial, the Government called a handwriting expert to testify that certain entries in the Union's books were made in Stubin's handwriting. The basis for comparison of the entries was a series of checks signed by Stubin in the course of his union duties. Miss Hoyer testified that she was familiar with Stubin's signature and that the checks were in fact signed by Stubin. Hence, the jury might properly find that the handwriting on the books of account was the same as the signatures on the checks, and that Stubin had signed the checks. Therefore, the trial court correctly allowed the handwriting expert to express his opinion that the entries in question had been in Stubin's handwriting. Reining v. United States, 167 F.2d 362 (5th Cir. 1948); see United States v. Angelo, 153 F.2d 247, 251 n. 9 (3rd Cir. 1946).

■ Stubin's next allegation of error is that there was an improper foundation for the introduction of records pursuant to the Business Records Statute, 28 U.S.CA. § 1732. The substance of Stubin's argument is that the witness introducing the records testified that they were *kept* in the regular course of business rather than *made* in the regular course of business. Stubin did not specifically bring to the district court's attention that he objected to introduction of the records because of the discrepancy between the words of the statute and the witness's testimony. In any event, such a variation from the language of the statute does not create reversible error particularly when the record reveals that the substantive requirements of the Business Records Statute were met. *See* Trout v. Pennsylvania R. Co., 300 F.2d 826 (3rd Cir. 1962); United States v. Quick, 128 F.2d 832 (3rd Cir. 1942).

■ At the close of testimony, Stubin submitted a requested instruction regarding the fact that the evidence in this case was predominantly circum-

stantial.[6] The trial court properly refused to charge as requested. In Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954) the Supreme Court considered a requested charge similar to the one proposed here and declared that when "the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect." 348 U.S. at 139–140, 75 S.Ct. at 137. Stubin does not contend that the Court's basic charge on the standard of reasonable doubt was inadequate. Nonetheless, we have reviewed the entire charge to the jury and find it set forth an adequate and correct statement of the meaning of the term "reasonable doubt."[7] Therefore there was no need to charge the jury regarding circumstantial evidence as requested by the defense, especially since such a charge might have confused them.

Stubin's last major contention is that the trial court's instructions were inadequate regarding the necessary element of interstate commerce. In this respect, it should be noted that Stubin failed to bring to the trial court's attention the point he now asserts on appeal. Stubin's counsel had an obligation to make a timely objection specifically calling to the trial court's attention the alleged error in order that the judge may have taken corrective action if warranted. Failure to object ordinarily forecloses an appellant from raising an error on appeal. United States v. Provenzano, 334 F.2d 678, 690 (3rd Cir. 1964). *See e. g.,* United States v. Barrow, 363 F.2d 62, 67 (3rd Cir. 1965); United States v. Grosso, 358 F.2d 154, 158 (3rd Cir. 1966). In any event, we have read the trial court's charge on this point and find that the district judge stated that "Before the defendant is subject to federal jurisdiction you must first deter-

6. The trial court rejected Stubin's request for the following charge:
   "You are instructed that this is what is called a circumstantial evidence case so far as the first nineteen counts are concerned. Therefore, you are charged that the rule in circumstantial evidence cases is that the inferences to be drawn from the evidence must not only be consistent with the guilt of the accused but must be inconsisent with every reasonable hypothesis of his innocence. If there is a reasonable hypothesis inconsistent with guilt, then you must find the defendant not guilty, of those nineteen counts."

7. The trial court charged the jury regarding the meaning of "reasonable doubt" as follows:
   "The law presumes a defendant to be innocent of crime. Thus a defendant, although accused, begins the trial with a "clean slate" with no evidence against him, and the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the defendant. So the presumption of innocence alone is sufficient to acquit a defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt from all the evidence in the case.

   "A reasonable doubt is a fair doubt based upon reason and common sense and arising from the state of the evidence. It is rarely possible to prove anything to an absolute certainty. A reasonable doubt is one that is sufficient to cause a reasonbly prudent person to hesitate to act in the most important affairs of his life. A defendant is not to be convicted on mere suspicion or conjecture.
   "A reasonable doubt may arise not only from the evidence produced, but also from a lack of evidence. Since the burden is upon the Government to prove the defendant guilty beyond a reasonable doubt of every essential element of the crime charged, a defendant has the right to rely upon the failure of the prosecution—or the Government—to establish such proof. The defendant may also rely upon evidence brought out on cross-examination of witnesses for the Government. The law does not impose upon a defendant the duty of any producing evidence.
   "A reasonable doubt exists in any case when, after careful and impartial consideration of all the evidence, the jurors do not feel convinced to a moral certainty that the defendant is guilty of the charge."

·mine that he was connected with a labor organization engaged in an industry affecting commerce." Thereafter, the court read relevant portions of the statute defining the terms used in his charge. While the instructions by the trial court might have been more exten-·sive in this regard, they certainly were adequate, and in any event may not be denominated "plain error" within the meaning of Rule 52, a conclusion which is necessary before we may notice error absent a specific objection made at trial.

We have considered carefully other allegations of error suggested by Stubin at oral argument, and find them to be without merit.

Accordingly, the judgment of the district court will be affirmed.