UNITED STATES of America

v.

Raymond A. OATES, Jack Miller, a/k/a Charles Muller.

Appeal of Jack MILLER.

No. 71-2098.

United States Court of Appeals, Third Circuit.

Argued April 4, 1972.

Decided Sept. 19, 1972.

Certiorari Denied Jan. 22, 1973. See 93 S.Ct. 965.

Lester J. Schaffer, Zink, Shinehouse & Holmes, Philadelphia, Pa., for appellant.

Fred M. Acuff, Jr., U. S. Department of Justice, Crim. Div., Appellate Section, Washington, D. C., for appellee.

Before SEITZ, Chief Judge, HUNTER, Circuit Judge, and McCUNE, District Judge.

## OPINION OF THE COURT

McCUNE, District Judge.

Appellant Jack Miller was indicted for various violations of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 401 et seq., (LMRDA). In a non jury trial Miller was convicted of embezzling $1050.00 in union funds in violation of § 501(c) LMRDA, 29 U.S.C.A. § 501(c)[1] and of making a false statement on an LM–2 report in violation of § 209(b) LMRDA, 29 U.S.C.A. § 439(b).[2]

Miller had been Secretary-Treasurer of Local 158 of the Brotherhood of Teamsters in Philadelphia since 1963. His authorized salary for 1965 was $175.00 per week or $9100.00 for the year. During an investigation of the financial affairs of the union a Labor Department investigator found that Miller's salary was not paid in normal weekly sequence at the rate of $175.00. There were gaps in the dates upon which the salary was paid during 1965 (P. 16a). The union maintained a cash disbursements journal where disbursements were recorded under various headings or descriptions including salary and this journal revealed only one bank account, upon which checks were drawn, an account in the Broad Street Trust Company herein called the regular account. It was apparent that Miller had been paid only $7700.00 from the regular account. The investigator, R. G. Lyon, became aware that another account must have existed and inquiry of the union accountants revealed an account in the Lincoln National Bank herein called the Lincoln account, not disclosed by the union's books. From this account Miller received $2450.00 in 1965 as salary or a total from both accounts of $10,150.00.

The manner in which Miller was paid was unusual. For example, on June 25, 1965, he signed two checks, one from each account. The check drawn on the regular account was for $434.76 (three weeks pay or $525.00 reduced by payroll taxes) but the one on the Lincoln account was for $525.00. About one month later on July 22, 1965, he drew a check on the regular account for $579.68 ($700.00 or four weeks pay less payroll taxes) and on the same day drew a check for $175.00 on the Lincoln account. Meanwhile he had drawn weekly payments from the Lincoln account in the amount of $175.00 on July 1, July 8, and July 15, 1965.

All checks issued by the union were required to carry the signatures of Miller and the local president, Raymond A. Oates. Miller admitted signing all checks but contended that he and Oates merely signed checks in blank when requested to do so by the bookkeeper, Mrs. Busch. However a stipulation was introduced that Mrs. Busch, if called, would testify that Miller directed what was to appear on check vouchers as the stated purpose for which the checks were drawn.

The original LM–2 form for the year 1965 showed that Miller was reimbursed

---

1. "(c) Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both." 29 U.S.C.A. § 501(c).

2. "(b) Any person who makes a false statement or representation of a material fact, knowing it to be false, or who knowingly fails to disclose a material fact, in any document, report, or other information required under the provisons of this subchapter shall be fined not more than $10,000 or imprisoned for not more than one year, or both." 29 U.S.C.A. § 439(b).

for expenses in the amount of $6409.00 but that figure included the $2450.00 he had received as salary from the Lincoln account leaving $3959.00 as actual expense for which Miller was presumably reimbursed. The form did not disclose the $2450.00 as salary and of course the $2450.00 included the excess $1050.00 which Miller had drawn over and above the salary of $9100.00 to which he was entitled. The original form showed salary paid Miller to be $7700.00, the total of the checks drawn on the regular account.

The LM–2 form was amended twice and the second amendment, the one in issue, showed salary of $10,150.00 which was the amount received by Miller in 1965. However the amended form continued to show that Miller had been reimbursed expenses in the amount of $6409.00 and thus either one figure or the other was in error.

The investigator prepared an exhibit showing the checks drawn on the regular account and the checks drawn on the Lincoln account, Exhibits G1A and G1B respectively which was introduced in evidence.

Miller's defense as to the conversion was that while he had signed the checks, he had not actually received the excess funds to the best of his knowledge and that the government was obligated to show that he had received the excess funds. His defense was centered on eight checks. He denied the endorsement on eight checks, four of which were introduced in evidence and four of which were not introduced.[3] The total of the checks on which the endorsements were denied was $2275.00. (He admit-

3. The endorsements on the backs of two groups of checks were contested. The first group consisted of four checks which were made a part of the record. They were the following, all drawn on the general account:

Check # 4636 for $434.76 (3 weeks at $175.00—less withholding) dated June 25, 1965—Exhibit D–1.

Check # 4801 for $182.96 (1 week plus some unknown amount) dated September 16, 1965—Exhibit D–2.

Check # 4968 for $151.26 (1 week less withholding) dated November 5, 1965—Exhibit D–3.

Check # 5147 for $151.26 (1 week less withholding) dated December 17, 1965—Exhibit D–4.

(The defendant denied the endorsement on all of the above checks. The labor department investigator ventured a guess that # 4636 bore Miller's endorsement. He said the endorsement on # 4801 did not appear to be Miller's. He said the endorsement on # 4968 seemed similar to Miller's signature. He said the endorsement on # 5147 did not appear to be Miller's endorsement).

The second group of checks consisted of six checks which were not made a part of the record but they were a part of Exhibit G1A and G1B (government exhibits) which were made a part of the record and these checks were referred to in the testimony (p. 123a to p. 125a).

One of the checks # 4694 for $579.68 ($700.00 less withholding) dated July 23, 1965, Exhibit G28 was drawn on the general fund. On this check Miller denied that the endorsement was his.

The other five checks were drawn on the special (Lincoln) account and were as follows:

Check # 6 for $175.00 dated July 1, 1965, Exhibit G29 (endorsement denied).

Check # 8 for $175.00 dated July 8, 1965, Exhibit G30 (endorsement denied).

Check # 101 for $175.00 dated July 15, 1965, Exhibit G33 (endorsement denied).

Check # 103 for $175.00 dated July 22, 1965, Exhibit G31 (endorsement admitted).

Check # 105 for $175.00 dated July 22, 1965, Exhibit G32 (endorsement admitted).

The government investigator was not asked about his opinion of the endorsements on the four checks in this group.

In addition, on June 25, 1965, Miller received Check # 4 for $525.00 (three weeks salary not reduced by withholding) from the Lincoln account upon which the endorsement was not denied.

Miller drew from the Lincoln account six additional checks, Nos. 108, 110, 114, 116, 118 and 121, each for $175.00, none of which were reduced by withholding and on which there was no denial of the endorsement.

The checks drawn on the Lincoln account were considered salary because Miller did not defend on the basis that they were for expenses or for any other purpose.

ted the endorsement on two of the checks drawn on the Lincoln account which were not received in evidence.)

His defense as to the LM–2 report was that he had made no entries on the report but had relied on the union's accountant who had prepared the form and that the salary stated was the salary actually paid.

The court found Miller guilty of the embezzlement of six salary payments of $175.00 finding that he had received the payments being well aware that they were duplicate payments and being persuaded in great measure by the number of payments and the amounts of those payments during June and July of 1965. The court also found Miller guilty of making a false entry on the LM–2 report.

On appeal Miller argues that his conviction must be reversed because there was insufficient evidence of his receipt of the proceeds from the contested checks, that he made no entries on the LM–2 form but relied entirely on the accountant, that the salary shown on the form was in fact correct and finally that the court erred in considering the checks which were not introduced in evidence.

In review of appellant's conviction, the government is entitled to every favorable inference reasonably consistent with the evidence. United States v. Stubin, 446 F.2d 457 (3d Cir. 1971).

■ Miller argues that he did not receive the excess funds to the best of his knowledge. To support this denial he points to the unclear endorsements on the four checks admitted in evidence. He denies the endorsements on four additional checks. His argument is that someone could have made these checks (signed in blank) to his order and then have cashed the checks without his knowledge. But his credibility was for the fact finder and the endorsements on the four checks in evidence were for the fact finder to consider in comparison with his signature as the maker. In view of the fact that two of the endorsements on the checks admitted in evidence appeared to be Miller's and in view of the fact that he admitted receiving and endorsing checks on the Lincoln account we believe the trial court was justified on this record in concluding that the endorsements on the contested checks were those of Miller and that Miller received the money.

■ We find no error in the court's consideration of the checks which were not introduced in evidence. The checks were listed on the schedules heretofore identified (G1A and G1B) which were admitted in evidence. The checks themselves were merely cumulative.

■ As to the conviction for making a false entry on the amended LM–2 report it is unquestioned that the report listed salary paid as $10,150.00 while the authorized salary for 1965 was $9100.00. We conclude that the salary schedule on the LM–2 form necessarily calls for a statement of the properly authorized salary. The false statement is made out by the inclusion in the salary schedule of payments knowingly received in excess of that authorized. While it is true that the accountant for the union prepared the form the defense of reliance on the accountant is not applicable in view of the trial court's conclusion that appellant was guilty under § 501(c). The trial court had determined that appellant had received money to which he was not entitled and had received it from a source that was not disclosed by the union's records. The accountant testified that there were in fact no union records of such account and this made it impossible to file a factual report. Defendant had created the undisclosed account or knowingly had permitted it to exist and had drawn funds from it.

■ Under such circumstances appellant's asserted reliance on the accountant cannot be recognized as a valid defense. Such defense is available only when one fully discloses to the professional relied upon all relevant information, United States v. Cox, 348 F.2d 294 (6th Cir. 1965).

The judgment will be affirmed.